## PEOPLE v DEMPSTER

Docket No. 55703. Argued April 9, 1975 (Calendar No. 13).—Decided June 3, 1976.

Phyllis Dempster and Dempster Investment Company, Inc., were convicted of selling unregistered securities in violation of the Uniform Securities Act, MCLA 451.501 *et seq.;* MSA 19.776(101) *et seq.,* in a bench trial in the Recorder's Court of Detroit, Joseph E. Maher, J. The Court of Appeals, Lesinski, C. J., and Bashara and Van Valkenburg, JJ., affirmed (Docket No. 15119). Phyllis Dempster appeals. *Held:*

1. The exemption of "commercial paper" from the registration provisions of the Uniform Securities Act should not be interpreted to exempt all instruments which may be "commercial paper" under article 3 of the Uniform Commercial Code. The purpose of the Uniform Commercial Code is to facilitate commerce, and the broad concept of commercial paper that might be appropriate for this purpose is at odds with the purpose of the Uniform Securities Act, to protect the public against swindles by requiring registration and investigation of securities before their sale to the public.

2. Judicial and administrative interpretations of the "commercial paper" exemption of the Securities Act of 1933, the model for the Uniform Securities Act, shows that the exemption applies only to prime quality negotiable commercial paper of a type not ordinarily purchased by the general public. The other exemptions in the Uniform Securities Act are for virtually riskless, gilt-edged securities.

3. The securities offered by the defendant in this case were not of the kind contemplated by the statute, and were not exempt as "commercial paper" from the registration provisions of the Uniform Securities Act.

4. The Uniform Securities Act places the "burden of proving an exemption" on the defendant. This must be interpreted to

REFERENCES FOR POINTS IN HEADNOTES
[1–7, 9] 69 Am Jur 2d, Securities Regulation—State § 10.
[2–4, 6, 9] 11 Am Jur 2d, Bills and Notes § 8.
[8] 73 Am Jur 2d, Statutes § 347.

mean that once the state establishes a prima facie case of statutory violation, the burden of going forward, *i.e.,* of injecting some competent evidence of the exempt status of the securities, shifts to the defendant. However, once the defendant properly injects the issue, the state is obliged to establish the contrary beyond a reasonable doubt.

5. An interpretation of a statute by a court may add a clarifying gloss to otherwise unclear words and thereby provide constructive notice to future defendants, but have the effect of an *ex post facto* law as to the present defendant, in the sense that he did not have fair warning that his contemplated conduct constitutes a crime. The term "commercial paper", upon which the Court has placed a clarifying gloss in the present opinion, was not sufficiently definite standing by itself to allow Dempster's conviction to stand.

Conviction reversed and defendant discharged.

51 Mich App 612; 260 NW2d 81 (1974) reversed.

1. SECURITIES REGULATION—UNIFORM SECURITIES ACT—CONSTRUCTION.

As a matter of judicial policy the Uniform Securities Act should be broadly construed to effectuate its purposes which are to make uniform the law of those states which enacted it and to coordinate the interpretation and administration of the act with the related Federal regulation (MCL 451.501 *et seq.*).

2. SECURITIES REGULATION—UNIFORM SECURITIES ACT—UNIFORM COMMERCIAL CODE—"COMMERCIAL PAPER".

The Uniform Commercial Code's broad concept of "commercial paper" that might be appropriate under the code provisions to facilitate commerce should not be read into the Uniform Securities Act because it is at odds with the purpose of the Securities Act, which is to protect the public against swindles (MCL 440.3805, 451.501 *et seq.*).

3. SECURITIES REGULATION—UNIFORM SECURITIES ACT—"COMMERCIAL PAPER"—EXEMPTION FROM REGISTRATION—CONSTRUCTION OF STATUTE.

The exemption from registration in the Uniform Securities Act of "commercial paper" must be construed with the purpose of the act, to protect the public against swindles, in mind, by reference to judicial and administrative interpretations of the exemption in the Securities Act of 1933, which was the model for the uniform act (MCL 451.801[1], 451.802[a] [9]; 15 USC 77c[a] [3]).

4. SECURITIES REGULATION—UNIFORM SECURITIES ACT—"COMMERCIAL PAPER"—EXEMPTION FROM REGISTRATION—CONSTRUCTION OF STATUTE.

The "commercial paper" exemption from registration in the Uniform Securities Act applies only to prime quality negotiable commercial paper of a type not ordinarily purchased by the general public, that is, paper issued to facilitate well-recognized types of current operational business requirements and of a type eligible for discounting by Federal Reserve banks (MCL 451.802[a][9]).

5. SECURITIES REGULATION—UNIFORM SECURITIES ACT—EXEMPTION FROM REGISTRATION.

The Uniform Securities Act grants exemption from registration only in those instances where the securities are virtually riskless, inherently gilt-edged, and unlikely to be used in a deceptive scheme (MCL 451.802).

6. SECURITIES REGULATION—UNIFORM SECURITIES ACT—"COMMERCIAL PAPER".

An instrument purporting to create an "open-end trust account" for the purchaser in an investment company, which was in effect a non-negotiable note of the company, was not "commercial paper" exempt from registration under the Uniform Securities Act (MCL 451.802[a][9]).

7. SECURITIES REGULATION—UNIFORM SECURITIES ACT—EXEMPTIONS—BURDEN OF PROOF.

The section of the Uniform Securities Act which states that the burden of proving an exemption or an exception is upon the person claiming it must be interpreted to mean that once the state establishes a prima facie case of statutory violation, the burden of going forward, *i.e.,* of injecting some competent evidence of the exempt status of the securities, shifts to the defendant; however, once the defendant properly injects the issue, the state is obliged to establish the contrary beyond a reasonable doubt (MCL 451.802[d]).

8. CRIMINAL LAW—STATUTES—CONSTRUCTION—DUE PROCESS.

A court may add a clarifying gloss to otherwise unclear words of a criminal statute and thereby provide constructive notice to *future* defendants, but an unforeseeable judicial enlargement of a criminal statute applied retroactively operates like an *ex post facto* law to deprive the defendant of due process of law in the sense of fair warning that his contemplated conduct is a crime.

9. SECURITIES REGULATION—UNIFORM SECURITIES ACT—"COMMERCIAL PAPER"—CRIMINAL LAW—DUE PROCESS.

The term "commercial paper" used in the Uniform Securities Act to describe instruments exempt from the registration provisions of the act was not sufficiently definite, standing by itself, to warn the defendant in the case in which the term was construed and a clarifying gloss added that failure to register the paper sold by the defendant was a crime, and therefore the conviction of selling unregistered securities must be reversed (MCL 451.701).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *James M. Wouczyna,* Assistant Prosecuting Attorney, for the people.

*Levine & Benjamin, P. C.* (by *Edwin S. Bean)* for defendant Phyllis Dempster.

Amicus Curiae: *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Marc A. Goldman,* Assistants Attorney General, for Department of Commerce, Corporation and Securities Bureau.

KAVANAGH, C. J. Defendants were convicted of selling unregistered securities in violation of the Uniform Securities Act, MCLA 451.701; MSA 19.776(301) in a 1971 bench trial in Detroit Recorder's Court, and defendant Phyllis Dempster was sentenced to a term of imprisonment. The convictions were affirmed by the Court of Appeals.

Three issues are presented on appeal in this Court: (1) Whether the securities were exempt as "commercial paper" from the registration provisions of the statute? (2) Whether the statute impermissibly places the burden of proof on a defendant to prove an exemption? (3) Whether the "com-

mercial paper" exemption is sufficiently definite to sustain the criminal conviction?

## I. THE ACT

The Uniform Securities Act, 1964 PA 265, became effective January 1, 1965, replacing the 40-year-old Michigan Blue Sky Law, 1933 PA 205.[1] The act substantially follows the language of the Uniform Securities Act. The Uniform Securities Act carries within itself the statement of its purpose, *i.e.* to "make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation". MCLA 451.815; MSA 19.776(415). As a matter of judicial policy the act should be broadly construed to effectuate its purposes. *Tcherepnin v Knight,* 389 US 332, 336; 88 S Ct 548; 19 L Ed 2d 564 (1967). "In essence this legislation * * * is designed to protect the public against fraud and deception in the issuance, sale, exchange, or disposition of securities within the State of Michigan by requiring the registration of certain securities and transactions." Schmidt & Cavitch, Michigan Corporation Law (1974), p 1071. Violation of the act's provisions is punishable by fine and imprisonment. MCLA 451.809; MSA 19.776(409).

## II. THE COMMERCIAL PAPER EXEMPTION

The Uniform Securities Act exempts certain

---

[1] State securities laws have generally been referred to as "Blue Sky Laws" due to the fact that such legislation is intended to prevent "speculative schemes which have no more basis than so many feet of 'blue sky' ". *Hall v Geiger-Jones Co,* 242 US 539, 550; 37 S Ct 217; 61 L Ed 480 (1917).

securities and transactions from its registration provisions.[2] One of the exemptions is for:

"[a]ny negotiable promissory note or commercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which evidences an obligation to pay cash within 12 months of the date of issuance, exclusive of days of grace, or any renewal of such note or paper which is likewise limited, or any guarantee of such note or paper or of any such renewal." MCLA 451.802(a)(9); MSA 19.776(402)(a)(9).

Defendants allege that the securities sold by Dempster Investment Company fit within this exemption, and thus need not have been registered.

Mrs. Dempster and Dempster Investment Company sold to the general public shares in an "open-end trust account". One of the particular securities involved reads as follows:

"Date December 2, 1969
Renewal of Trust Account
Dated September 2, 1969
*   *   *

"The Dempster Investment Company (a Michigan Corporation) incorporated February 27th, 1964 to engage and carry on a general brokerage and financial business, including mortgage brokerage and financing thereof—with Main Offices located at 14500 West Eight Mile Road, Oak Park, Michigan and branch offices throughout the State, as of this date, December 2nd, 1969, hereby creates an Open-End Trust Account for

---

[2] MCLA 451.801(1); MSA 19.776(401)(1) defines "security" as: "any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; * * * or, in general, any interest or instrument commonly known as a 'security' * * * ." The instruments sold by Mrs. Dempster were clearly "securities" within the definition of this act.

Gerald N. Schultz and/or Charlotte A. Schultz with the principal sum of Three Thousand ($3,000.00) Dollars.

"This principal sum ($3,000.00) is invested in the Dempster Investment Company at the rate of four (4%) percent per month interest payable each month on the principal amount owing with final total payment of principal amount ($3,000.00) due February 2nd, 1970.

"In the event Gerald N. Schultz and/or Charlotte A. Schultz should want any part or all of principal sum withdrawn before the final due date—so be it—upon a thirty (30) day written notice.

> "DEMPSTER INVESTMENT COMPANY
> "By: Phyllis Dempster
>
> Its President".

For the instruments sold by defendants to be exempt under § 402(a)(9) as claimed by them, they must either be negotiable promissory notes or commercial paper. The instruments clearly are not negotiable promissory notes because there are no words of negotiability; appellants do not claim otherwise.

Appellants' major contention is that these instruments are "commercial paper" within § 402(a)(9). Unfortunately, the Uniform Securities Act does not define commercial paper. Appellants argue that because Article 3 of the Uniform Commercial Code is entitled "Commercial Paper", instruments satisfying MCLA 440.3805; MSA 19.3805 should be exempt under § 402(a)(9) of the Securities Act. Section 3-805 of the UCC, *supra,* reads:

"This article applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument."

This is the section relied upon by Mrs. Dempster. Professor James J. White of the University of Michigan Law School, an undisputed authority in the field of commercial transactions, was called as an expert witness by the defense at trial. Professor White testified that: "It would be my opinion that this [instrument] is commercial paper under Article 3". Professor White described the security involved as "a horribly drafted non-negotiable note". Assuming that Professor White's conclusion is accurate, the issue remains as to whether Article 3's concept of commercial paper should be read into the Securities Act.[3]

The prosecution called, as their expert, Mr. John Hueni, Director of the Securities Bureau of the Michigan Department of Commerce. Mr. Hueni testified that the instruments involved here were securities, were not exempted, and were required to be registered.

In *People v Hall,* 391 Mich 175, 189–190; 215 NW2d 166, 174 (1974), this Court in language particularly appropriate to this issue stated:

"We begin our review of these statutes by affirming our previous holdings that penal statutes are to be strictly construed. *Lansing v Brown,* 172 Mich 50; 137 NW 535 (1912); *People v Goulding,* 275 Mich 353; 266 NW 378 (1936). However, as the Court pointed out in *People v Consumers Power Co,* 275 Mich 86; 265 NW 785 (1936), the fact that these types of statutes are narrowly construed does not require rejection of that sense of the words which best harmonizes with the overall context of the statutes and the end purpose sought to be achieved by such legislation. With criminal

---

[3] Professor White, with admirable candor, expressly stated on several occasions during the trial that he was not an expert on Blue Sky Laws or securities. *E.g.* "You try to push me into testifying as to my interpretation of the SEC and what I am really saying, and I am competent to say, is what commercial paper means under Article 3 of the UCC".

statutes, such end purpose is the evil sought to be corrected and the objects of the law sought to be effectuated. *Hightower v Detroit Edison Co,* 262 Mich 1; 247 NW 97; 86 ALR 509 (1933)."

The application of the UCC concept of commercial paper is singularly inappropriate in this setting. The UCC is intended to "simplify, clarify and modernize the law governing commercial transactions". MCLA 440.1102(2)(a); MSA 19.1102(2)(a). The Uniform Securities Act, however, is intended to prevent an offering to the public of securities without first giving the Securities Bureau an opportunity to investigate the venture and determine whether sound policy justifies permitting the issuer to offer these securities for sale. Schmidt & Cavitch, Michigan Corporation Law (1974), p 1071.

The broad concept of commercial paper that might be appropriate under the UCC provisions to facilitate commerce is, therefore, at odds with the purpose of the Securities Act to protect against swindles. The Uniform Securities Act was drafted as a means of discouraging swindlers from selecting a particular state in which to operate. With this purpose in mind, we look to the administrative and judicial interpretations of the commercial paper exemption rather than to the UCC.[4]

The Uniform Securities Act, § 402, lists the exemptions to registration requirements. Section 402(a)(9) exempts "commercial paper". The Commissioners' notes to this provision state: "This exemption is modeled on § 3(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(3) * * * ". The

---

[4] The comments of The National Conference of Commissioners and American Law Institute to UCC 3-101 state: "It should be noted especially that this Article does not apply in any way to the handling of securities. Article 8 deals with that subject." UCC 3-103(1) states: "This article does not apply to money, documents of title or investment securities."

Securities Act of 1933 exempts in 3(a)(3), *supra,* certain promissory notes with an original maturity date of less than nine months. The original 1933 draft of the Federal Securities Act provided no exemption for short-term notes. The § 3(a)(3) exemptions were then included by amendment because "it seemed to the [Federal Reserve] Board that the Act was not intended to apply to bankers acceptances or short-time paper issued for the purpose of obtaining funds for current transactions in commerce, industry, or agriculture and purchased by banks and corporations as a means of employing temporarily idle funds". Comment, *The Commercial Paper Market and the Securities Acts,* 39 U Chi L Rev 362, 382 (1972).

Statements made during the hearings of the House Committee on Interstate and Foreign Commerce considering the 1933 act exhibit an understanding that the commercial paper to which the exemption was to be applied:

"was sold only to banks and not to the 'public'. Such a qualification was expressly included in the amended Senate version of the Act * * * . In the course of Senate debate, the exemption was amended to exclude that clause. The text of the motion to strike demonstrates that the commercial paper to which the securities legislation referred was not sold to the general public and that the original clause requiring that instruments exempted by section 3(a)(3) not be sold to the general public was deleted in order to insure that the exemption would be interpreted to include certain financial instruments, other than commercial paper, that were sold to the general public. *Because commercial paper circulated only among banks, the provision in the original draft was thought to be unnecessary."* *Id.* 385 (emphasis added) (citations omitted).[5]

---

[5] For a general discussion of the legislative history of the 1933 act, see Landis, *The Legislative History of the Securities Act of 1933,* 28 Geo Wash L Rev 29 (1959).

The scope of this exemption was interpreted by the Securities and Exchange Commission in Release No 4412 (1961), 26 Fed Reg 9158, 9159 (1961):

"The legislative history of the Act makes clear that section 3(a)(3) applies only to prime quality negotiable commercial paper of a type not ordinarily purchased by the general public, that is, paper issued to facilitate well recognized types of current operational business requirements and of a type eligible for discounting by Federal Reserve banks."

Chief Judge Friendly, writing the opinion in *Zeller v Bogue Electric Manufacturing Corp,* 476 F2d 795, 800 (CA2, 1973), stated: "Such a ruling [Release No 4412, *supra],* by an agency charged with the administration of a statute, while not conclusive, is entitled to substantial weight". The SEC interpretation has also been relied upon in other cases regarding this claimed exemption. See, *e.g., Sanders v John Nuveen & Co, Inc,* 463 F2d 1075, 1079 (CA7, 1972), *cert den* 409 US 1009; 93 S Ct 443; 34 L Ed 2d 302 (1972); *United States v Hill,* 298 F Supp 1221, 1226–1227 (Conn, 1969); *Anderson v Francis I du Pont & Co,* 291 F Supp 705, 708 (Minn, 1968).

Applying the standards enunciated above, which are in furtherance of the purposes of the Uniform Securities Act, to the instant case, the instruments sold by Dempster Investment Company fail on each ground.

The Uniform Securities Act grants exemptions from registration only in those instances where the securities are virtually riskless, such as government bonds, nationally listed securities, etc.[6]

Those exempt securities are "so inherently gilt-edge, or so unlikely to be utilized in a deceptive

---

[6] MCLA 451.802(a)(1)–(10); MSA 19.776(402)(a)(1)–(10).

scheme, that the Michigan Blue Sky Law exempts them from the prior registration requirement". Schmidt & Cavitch, Michigan Corporation Law (1974), p 1073.

Considering these principles, and the clear purpose of the Uniform Securities Act to protect the public from the dangers inherent in the indiscriminate sale of instruments of indebtedness it would be irrational to exclude the type of securities involved here from the act's coverage. Inherent in the act's purpose is the prevention of just such sales to the general public without the protection afforded by disclosure. *People v Walberg,* 263 Cal App 2d 286; 69 Cal Rptr 457 (1968). We hold, therefore, that the type of instruments sold by appellants in this case were not "commercial paper" within the meaning of the Uniform Securities Act exemptions.

### III. BURDEN OF PROOF

The Uniform Securities Act, MCLA 451.802(d); MSA 19.776(402)(d), states: "In any proceeding under this act, the burden of proving an exemption or an exception is upon the person claiming it". Appellants assert that this provision, included within a criminal statute, requires them to bear an unconstitutional burden of proving innocence. We disagree.

The contention that the instruments involved here are "commercial paper" is in the nature of an affirmative defense as a claim "that the accused is within an exception or proviso in the statute defining the crime". McCormick on Evidence (Cleary ed, 1972), p 800:

"[T]he recent trend is to treat these so-called matters of defense as situations wherein the accused will usu-

ally have the first burden of producing evidence in order that the issue be raised and submitted to the jury, but at the close of the evidence the jury must be told that if they have a reasonable doubt of the element thus raised they must acquit." *Id.* 802.

Recently, in *People v Henderson,* 391 Mich 612, 616; 218 NW2d 2, 4 (1974), we considered whether, in a prosecution for carrying a concealed weapon, by placing the burden of proving a license on the defendant the statute absolved the state of its burden of proving its entire case beyond a reasonable doubt. We stated that once the prosecution establishes a prima facie case of violation of the statute, "the defendant has the burden of injecting the issue of license by offering some proof * * * that he has been so licensed. The people thereupon are obliged to establish the contrary beyond a reasonable doubt." We interpreted the statute in that manner "not as absolving the state from proving one element of the crime, for to do so would vitiate the presumption of innocence". *Id.* We are cognizant of the fact that the concealed weapons statute speaks of the "burden of establishing" the license, and states that this does not shift the "burden of proof for the violation".[7] While that language might be preferable to that of the instant statute, the principle is not different.[8]

---

[7] MCLA 776.20; MSA 28.1274(1) provides:

"In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof for the violation."

[8] Probably the clearest statement of the principle intended by such a proviso is found in the Drug Abuse Prevention & Control Act, 84 Stat 1279 (1970), 21 USCA 885(a)(1):

"It shall not be necessary for the United States to negative any exemption or exception set forth in this title [subchapter] in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this title [subchapter], and the

In *United States, ex rel Shott v Tehan,* 365 F2d 191 (CA6, 1966), *cert den,* 385 US 1012; 87 S Ct 716; 17 L Ed 2d 548 (1967), on a factual record very similar to the case at bar the same issue was raised. Shott was charged with violating the Ohio Securities Act by selling promissory notes without prior registration, and claimed that he was denied due process because the act's procedural provisions created an evidentiary presumption that he made an unlawful public offering of his promissory note and further shifted to the defendant the burden of proving his innocence. The Court, in rejecting appellant's contention, held:

"The Ohio Blue Sky Law, as do similar State security regulations, places the burden on an offeror or seller of a security to determine if the security may be sold lawfully. Once the seller has determined that a security falls within a class of exempt securities, that knowledge is peculiarly within the personal knowledge of the seller. Considering the purpose of the State Securities Act, it cannot be said that lifting the burden of proof from the State in criminal prosecutions and casting upon the defendant the defense that he comes within an exemption is unreasonable and unfair. Here there is a general prohibition which is applicable to everyone who is unable to bring himself within the range of an exemption." 365 F2d at 195.[9]

This Uniform Securities Act provision, read in light of *People v Henderson, supra,* must be interpreted to mean that once the state establishes a prima facie case of statutory violation, the burden of going forward, *i.e.,* of injecting some competent evidence of the exempt status of the securities,

burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit."

[9] *Accord, State v Goodman,* 110 Ariz 524; 521 P2d 611 (1974).

shifts to the defendant. However, once the defendant properly injects the issue, the state is obliged to establish the contrary beyond a reasonable doubt. *Accord, United States v Dinneen,* 463 F2d 1036 (CA10, 1972); *Commonwealth v David,* 1974 Adv Sheets 455; 309 NE2d 484 (Mass, 1974), *Nelson v State,* 355 P2d 413 (Okla Crim App, 1960).[10] There is ample evidence that the state met its burden here.

## IV. Definiteness of the Exemptive Provision

During oral argument in this case, counsel for defendants raised the issue of due process notice requirements of a criminal statute. It is contended that even if we hold that these instruments were not exempted from the registration requirements of the Uniform Securities Act as commercial paper, it would be a denial of due process to impose this interpretation retroactively and sustain defendants' conviction. Defendants argue that the record in this case provides evidence that even those charged with the enforcement of the state's securities law were of the view that if these instruments fit within the Uniform Commercial Code concept of "commercial paper", they would be exempt from registration. There is support for that contention in the record of Mr. Hueni's testimony.

Because these instruments fit within an acceptable definition of commercial paper, it is contended that the defendants were free to rely on such a definition unless the statutory language clearly indicated otherwise.

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contem-

---

[10] *See also* Model Penal Code (Proposed Official Draft, 1962), § 1.12.

plated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v Harriss,* 347 US 612, 617; 74 S Ct 808; 98 L Ed 989 (1954).

A criminal statute must be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties". *Connally v General Construction Co,* 269 US 385, 391; 46 S Ct 126; 70 L Ed 322 (1926). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939). "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v United States,* 401 US 808, 812; 91 S Ct 1056; 28 L Ed 2d 493 (1971).

Exemptions and provisos within a criminal statute must be defined with the same specificity as the prohibitive language of the statute. *Cline v Frink Dairy Co,* 274 US 445; 47 S Ct 681; 71 L Ed 1146 (1927).

This court is not able, within the bounds of due process, to "interpret" a criminal statute which contains an ambiguous exemption such that it results in conviction of the defendant charged in the specific case. That is not the "fair warning" demanded by the Constitution.

It is true that interpretations of statutory provisions by a court may add a clarifying gloss to otherwise unclear words, and thereby provide constructive notice to *future* defendants, but

"an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law * * * " and " * * * the effect is to deprive [the defendant] of due process of law in the

sense of fair warning that his contemplated conduct constitutes a crime." *Bouie v City of Columbia,* 378 US 347, 353, 355; 84 S Ct 1697; 12 L Ed 2d 894 (1964).

While we are persuaded, therefore, that the "clarifying gloss" we have placed upon the commercial paper exemption in this opinion is correct when the purpose of the Uniform Securities Act is thoroughly considered, we are also persuaded that the term "commercial paper" standing by itself was not sufficiently definite to allow this conviction to stand.

"The objection of vagueness is twofold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured *for the future* by an authoritative judicial gloss." Freund, *The Supreme Court and Civil Liberties,* 4 Vand L Rev 533, 541 (1951). (Emphasis added.)

The fact that the instrument involved in this case was not of the type "intended" to be exempted from the Act's registration provisions does not allow a different result in this case. There is no doubt that if this instrument had read "payable *to the order of* Gerald N. Schultz", it would be a negotiable promissory note. Section 402(a)(9) exempts negotiable promissory notes from the Act's registration provisions. Thus, it would appear that Mrs. Dempster could not be convicted for failure to register the instrument. This would be the case despite the fact that this "negotiable promissory note" would certainly not be of the type *intended* to be exempted from the Act's registration provisions. It would be no more "prime quality paper of a type not ordinarily purchased by the general

public * * * " than the instrument involved in the present case. Without a prior "clarifying gloss" or a clear definition of the special kind of negotiable promissory note intended to be exempted under the statute, or perhaps some form of prior actual notice that the instruments are not of the type exempted from registration,[11] a conviction could not stand for failure to register such a negotiable note.

"To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated." *United States v Wiltberger,* 18 US (5 Wheat) 76, 96; 5 L Ed 37 (1820).

Thus, while the construction we have placed on the commercial paper exemption is valid for the future, "it may not be applied retroactively, any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal". *Bouie v City of Columbia, supra,* 362. See also, *Douglas v Buder,* 412 US 430; 93 S Ct 2199; 37 L Ed 2d 52 (1973).

As we recently said in *People v Bloss,* 394 Mich 79, 81; 228 NW2d 384 (1975):

"We are persuaded that defendant's conviction cannot stand for the reason that at the time he did the act

---

[11] There are provisions within the Uniform Securities Act for the issuance of cease and desist orders and injunctions. We need not decide here whether such orders would satisfy the due process notice requirements in a particular case where the activity continued thereafter. MCLA 451.808; MSA 19.776(408).

complained of this Court had not construed the * * * statute * * * to proscribe such conduct."

*Conclusion*

The conviction is reversed and the defendant is discharged.

WILLIAMS, LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with KAVANAGH, C. J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.