PEOPLE v MITCHELL

Docket No. 106985. Submitted September 13, 1988, at Lansing. Decided February 21, 1989. Leave to appeal applied for.

Gary L. Mitchell pled no contest in Oakland Circuit Court, Norman L. Lippitt, J., to one count of violating subsection 101(2) of the Uniform Securities Act and was sentenced to sixteen to thirty-six months imprisonment. Defendant's plea was conditioned in part upon his appeal challenging the constitutionality of various provisions of the securities act. Defendant appealed.

The Court of Appeals *held:*

1. A wilful violation of subsection 101(2) of the Uniform Securities Act requires only that the defendant intend to do the act or intend the omission which is found to be material and misleading. The defendant need not have acted with a conscious purpose or specific intent to mislead.

2. Subsection 101(2) of the Uniform Securities Act is not unconstitutionally vague.

3. The sentence imposed upon defendant violates the indeterminate sentencing rule. The maximum sentence for a violation of § 101 of the Uniform Securities Act is seven years. Defendant's maximum prison term must be increased to seven years.

Affirmed but remanded for adjustment of maximum sentence.

1. SECURITIES REGULATION — FRAUD — INTENT.

A wilful violation of subsection 101(2) of the Uniform Securities Act requires only that the defendant intend to do the act or intend the omission which is found to be material and misleading; there is no requirement of a conscious purpose or specific intent to mislead (MCL 451.501[2]; MSA 19.776[101][1]).

2. SECURITIES REGULATION — CONSTITUTIONAL LAW — FRAUD — VAGUENESS.

Subsection 101(2) of the Uniform Securities Act is sufficiently clear to inform a person as to what conduct or omissions

REFERENCES

Am Jur 2d, Criminal Law § 542; Securities Regulation—State §§ 11-14.

See the Index to Annotations under Indeterminant Sentence; Securities Regulation; Sentence and Punishment.

constitute a crime; the subsection is not unconstitutionally vague (MCL 451.501[2]; MSA 19.776[101][2]).

3. CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES — MAXIMUM SENTENCES.

A trial court may set the minimum length of an indeterminate sentence within its discretion, but must state the maximum sentence as set by statute (MCL 769.8; MSA 28.1080).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Robert Ianni* and *John D. Walter,* Assistant Attorneys General, for the people.

*James C. Thomas, P.C.* (by *James C. Thomas*), for defendant on appeal.

Before: HOLBROOK, JR., P.J., and SAWYER and MURPHY, JJ.

MURPHY, J. Defendant pled no contest in Oakland Circuit Court to one count of violating § 101(2) of Michigan's Uniform Securities Act, MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.* Defendant's plea, however, was conditioned in part upon his appeal challenging the constitutionality of various provisions of the securities act. Defendant was sentenced to sixteen to thirty-six months imprisonment but remains on bond pending this appeal.

Defendant was originally charged with thirty-six counts of violating various provisions of the state Uniform Securities Act arising out of the now infamous Diamond Mortgage-A. J. Obie mortgage-fraud scheme. Records in the lower court file from the state's Attorney General's office indicate that Diamond Mortgage Corporation and A. J. Obie and Associates perpetrated the largest "ponzie" scheme in the history of this state and one of the largest in the nation. The Attorney General's office also

claims that losses in excess of $47,000,000 involving more than sixteen hundred investors had been involved in the mortgage-fraud scheme. Defendant Mitchell, a licensed securities agent, was the president of Diamond Mortgage Corporation and vice-president, treasurer, and compliance officer at A. J. Obie. The lower court record further reveals that defendant's duties as compliance officer included supervising the Obie sales agents to ensure that they were complying with state securities laws and regulations and reviewing sales documents to ensure that the investments were suitable for the investors. The Attorney General's office contended that defendant was aware that undisbursed mortgages were being sold to investors and that defendant was involved in the continued obtaining and selling of invalid mortgages. The Attorney General's office in its sentencing recommendation to the court concluded that while defendant had the duty and responsibility to make this information known to investors, which he failed to do, defendant did not control the funds paid into A. J. Obie and disbursed by Diamond Mortgage Corporation and, other than continuing to draw his salary, defendant did not personally profit from the fraud. Nonetheless, defendant was involved in and had knowledge of two of the fraud schemes as a result of his positions in the companies.

Defendant was bound over on eighteen counts of securities violations and, pursuant to a plea agreement,[1] pled no contest to the now-challenged lone

---

[1] Defendant's plea agreement provided: (1) all of defendant's remaining counts pending against him would be dismissed in both Oakland and Kent County; (2) a "sentence cap" of three years imprisonment; (3) defendant would voluntarily surrender his securities license and would not apply for another license in the future; (4) defendant would cooperate with the state; (5) defendant would be allowed to challenge the constitutionality of the securities act; (6) the state would not object to an expungement of defendant's record if

count of violating subsection (2) of § 101 of the securities act. Section 101 of the statute provides:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security or commodity contract, directly or indirectly:
>
> (1) To employ any device, scheme, or artifice to defraud.
>
> (2) *To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.*
>
> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. [Emphasis added. MCL 451.501; MSA 19.776(101).]

The penalty provision of the securities act in pertinent part provides:

> Any person who *wilfully* violates sections 101 . . . shall upon conviction be fined not more than $25,000.00, or imprisoned not more than 7 years, or both. [Emphasis added. MCL 451.809(a); MSA 19.776(409)(a).]

Defendant first contends that the above provisions are unconstitutional because a violation of § 101 does not require proof of scienter or "guilty knowledge" as a necessary element of the offense. Defendant argues that the word "wilfully" as used in the penalty provision necessarily means that a defendant must specifically intend to mislead or defraud, that is, a defendant must have had the mens rea, scienter, or "guilty knowledge" before violation of § 101 of the statute can be found.

such were available after five years; and (7) no further charges would be filed against defendant in relation to the Diamond Mortgage or A. J. Obie incident.

Initially, we note that the purpose of the Michigan Uniform Securities Act is to protect the investing public:

> The act was designed to protect the public from fraud and deception in the issuance, sale, exchange, or disposition of securities within this state by requiring the registration of certain securities and transactions. *People v Dempster,* 396 Mich 700, 704; 242 NW2d 381 (1976). Its purpose "is to prevent stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings and to protect credulous and incompetent persons from their own inclinations to speculate in hazardous enterprises." *People v Breckenridge,* 81 Mich App 6, 14-15; 263 NW2d 922 (1978), lv den 402 Mich 915 (1978). The act should be broadly construed to effectuate these purposes. *Dempster, supra. [Fred J Schwaemmle Construction Co v Dep't of Commerce, Corporation & Securities Bureau,* 420 Mich 66, 77-78; 360 NW2d 141 (1984).]

This Court has once before addressed the intent issue raised by defendant in this case. In *People v Cook,* 89 Mich App 72; 279 NW2d 579 (1979), lv den 406 Mich 1002 (1979), the defendant, who had been charged with seven violations of the Michigan Uniform Securities Act, argued that the trial court, which found the defendant guilty,[2] erred because it did "not disclose a finding of specific intent to defraud, which is necessary to a finding of 'wilfulness.'" This Court addressed the element of scienter as it related to a violation of subsections 101(2) and (3) by stating at 89 Mich App 85:

> "Wilfullness" is a word of many meanings, de-

---

[2] Defendant Cook was convicted of two of the seven securities charges and one count of obtaining money under false pretenses, MCL 750.218; MSA 28.415.

pending upon the context in which it is used. *Zimberg v United States*, 142 F2d 132, 137-138 (CA 1, 1944).[4] A review of the case law does not reveal a clearly consistent use of the word in the context of securities fraud. See Anno: *Element of Scienter as Affecting Criminal Prosecutions for Violation of Federal Securities Law,* 20 ALR Fed 227. We find the term wilfullness as used in the Michigan act differs essentially from negligence.

*To wilfully violate subsection 101(2) this defendant must have intended the omission which was found to be material and misleading.* To wilfully offend subsection 101(3) he must have intended to engage in the course of conduct found to operate as a fraud. In addition, this defendant must have known or recklessly failed to discover facts that rendered his conduct violative of those subsections. It is insufficient that he could have discovered the facts by due care. *On the other hand, he need not have acted with the conscious purpose to mislead or defraud. It is also unnecessary that he know his conduct violated the law.*[5] Like any element of a crime, knowledge and intent can be inferred. [Emphasis added.]

---

[4] The *Zimberg* Court noted a distinction generally between use of the word wilfull as it applies to acts bad in themselves, in which context it connotes evil purpose, and as it applies to acts not involving moral turpitude, in which context the word has no such connotation.

[5] In comparison, to be criminally liable for a violation of § 404 of the securities act, which proscribes false and misleading statements in documents filed and proceedings brought under the act, the defendant must wilfully violate the section, "knowing the statement made to be false or misleading in any material respect." MCL 451.809; MSA 19.776(409); see *United States v Peltz,* 433 F2d 48, 54-55 (CA 2, 1970).

---

Therefore, it has been made clear that a "wilfull" violation of § 101(2) only requires that the defendant must have intended the omission which was found to be material and misleading.

In addition to this foregoing authority, other jurisdictions addressing the same issue have

reached the same conclusion as did our Court in *Cook, supra*. For example, in *Van Duyse v Israel*, 486 F Supp 1382 (ED Wis, 1980), the defendant was convicted of violating § 551.41 of the Wisconsin statutes, which is almost identical to § 101 of Michigan's Uniform Securities Act.[3] The Wisconsin court was called upon to interpret the meaning of a "willful" violation of the statute. The court stated:

> Petitioner argues that the State was required to prove that he intended to defraud the persons who invested with him, while the State contends that it was merely required to show that petitioner's conduct was "willful." While it is not altogether clear just where the distinction lies, it appears that petitioner would require that the State prove that he entered into the investment contracts with the purpose or intent of defrauding his investors, while the State would merely require a showing that petitioner knowingly or willfully engaged in conduct which operated as a fraud upon the investors, whether or not petitioner intended that result.
>
> While the Wisconsin courts have not addressed the intent question, the language of the statutory provisions at issue supports the State's interpreta-

---

[3] The Wisconsin statute provides:

551.41 Sales and purchases.

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

We note that the only difference between Michigan's statutory section and the above statute is that Michigan's version addresses the sale of commodity contracts in addition to the sale of any security.

tion. Section 551.41(3) speaks of conduct which operates or would operate as a fraud or deceit upon any person. Section 551.58 imposes criminal liability on any person who "wilfully" violates any provision of the act. Taken together, the plain meaning of the statutory provisions indicates that the State need only prove that the accused wilfully engaged in conduct which operates or would operate as a fraud or deceit upon any person. *It is the nature of the act which is dispositive, not the state of mind of the actor. In this sense, the statute imposes a form of strict liability. Once the seller has wilfully engaged in conduct which operates or would operate as a fraud or deceit, he will not be heard to argue that he did not intend the consequences of his acts.*

Accordingly, the State was only required to prove that petitioner wilfully engaged in the type of conduct prohibited by the act. [Emphasis added. *Van Duyse,* p 1387.]

Two years later, the Wisconsin Court of Appeals in *State v Temby,* 108 Wis 2d 521; 322 NW2d 522 (1982), held that the identical securities act violation as occurred in this case, i.e., a subsection (2) violation, did *not* require the specific intent to defraud as an element of the offense.

Based on the foregoing, we hold that a "wilfull" violation of subsection 101(2) as proscribed by MCL 451.809(a); MSA 19.776(409)(a) requires only that the defendant intend to do the act or intend the omission which is found to be material and misleading. The defendant need not have acted with a conscious purpose or specific intent to mislead.

Defendant next argues that the statutory violations charged under the state's securities act are unconstitutional because they do not comply with constitutional due process notice requirements. Defendant basically contends that § 101 and the penalty provision of the securities act do not provide a "sense of fair warning to defendant that his conduct or omissions constituted a crime."

Our Supreme Court in *People v Ford,* 417 Mich 66, 98; 331 NW2d 878 (1982), stated that it is well established in due process analysis that the underlying principle is that no person shall be held criminally responsible for conduct which a person could not reasonably understand to be proscribed. In addition, our Supreme Court in *People v Dempster, supra,* stated:

> A criminal statute must be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally v General Construction Co,* 269 US 385, 391; 46 S Ct 126; 70 L Ed 322 (1926). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939). "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v United States,* 401 US 808, 812; 91 S Ct 1056; 28 L Ed 2d 493 (1971). [*Dempster, supra,* p 715.]

We therefore must determine if § 101 of Michigan's securities act sufficiently informed defendant of the proscribed conduct. Again, § 101(2) of the act, which defendant pled no contest to violating, states that it is unlawful for any person in connection with the offer, sale, or purchase of any security or commodity contract, directly or indirectly, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

While our research has uncovered no Michigan cases directly addressing a due process notice challenge to § 101 of the statute, the federal Securities Act of 1933, 15 USC 77q(a), which contains language substantially similar to that in MCL

451.501; MSA 19.776(101),[4] and which contains a similar "willful" enforcement provision,[5] has been interpreted as being sufficiently definite and certain to meet constitutional requirements of due process.

In *Coplin v United States*, 88 F2d 652 (CA 9, 1937), cert den 301 US 703; 57 S Ct 929; 81 L Ed 1357 (1937), the court was faced with the same contention that defendant in this case raises. The court stated:

> The appellants contend that the section "does not meet fair and honest standards for the legal definition of crime, because it is vague, indefinite, and fails to state an immutable standard of guilt."
>
> While it is true that the language of section 77q uses general terms, its provisions, while perhaps

---

[4] 15 USC 77q(a) provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

[5] Any person who *willfully* violates any of the provisions of this subchapter [15 USC 77a *et seq.*], or the rules and regulations promulgated by the Commission under authority thereof, or any person who willfully, in a registration statement filed under this subchapter [15 USC 77a *et seq.*], makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $10,000 or imprisoned not more than five years, or both. [Emphasis added. 15 USC 77x.]

falling short of the standards of immutability followed by the laws of the Medes and the Persians, are definite enough according to the canons of Anglo-American law.

Subjecting the words of section 77q(a)(2), upon which Count IX is specifically based, to critical scrutiny, we find no fatal ambiguity or indefiniteness, such as might prove a pitfall to any person, in the language of the appellants, "attempting to obey the law." *No honest and reasonable citizen could have difficulty in understanding the meaning of "untrue," "material fact," "any omission to state a material fact," "in the light of the circumstances under which they were made," or "misleading."* All these terms, it is true, call for interpretation in accordance to the facts of a given case. So do the terms "malice," "probable cause," "self-defense," "negligence," "fraud," "duress," "justification," and thousands of other expressions well established in the law.

Isolated from their setting, any of the foregoing terms might be said to be "indefinite" or "uncertain"; but, "in the light of the circumstances under which" they are used, their meaning is clear enough to the reasonable and well-intentioned citizen. "That is certain which may be rendered certain." [Emphasis added. *Coplin,* p 657.]

We are persuaded by the above reasoning and believe that the wording of the applicable portions of the securities act as charged in this case are sufficiently clear in their meaning to withstand a constitutional due process challenge. Therefore, we conclude that § 101(2) of the Michigan Uniform Securities Act is not unconstitutionally vague.

Having disposed of the arguments raised by defendant on appeal, we are obliged to note that defendant's sentence of sixteen to thirty-six months imprisonment is in violation of Michigan's indeterminate sentencing rule, MCL 769.8; MSA 28.1080. That statute in pertinent part provides:

> When a person is convicted for the first time for the commission of a felony, and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. *The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence.* [Emphasis added.]

Since a violation of § 101 of Michigan's Uniform Securities Act is a seven-year felony and subject to the above statute, defendant's *maximum* prison term must be increased to seven years.[6] See *People v Maxson,* 163 Mich App 467, 471; 415 NW2d 247 (1987), lv den 430 Mich 854 (1988). Therefore, we remand this matter to the circuit court with directions to adjust defendant's maximum sentence to comply with the statutory maximum seven years imprisonment.

Defendant's conviction is affirmed.

---

[6] The record is not entirely clear if the agreed-upon three-year "sentence cap" was meant to affect the minimum or maximum sentence to be imposed. As indicated, defendant's maximum prison term is established by statute and is not properly a subject for a negotiated plea.