CAVANAGH, J.
(concurring in part and dissenting in part). I concur in the result reached by the majority that, to convict a defendant of OUIL causing death under MCL 257.625(4), the prosecution must prove that the defendant was intoxicated and that his or her driving was both the factual and the proximate cause of the victim’s death. Like Justice WEAVER, I have carefully reexamined the language of the statute and this Court’s interpretation of that language in People v Lardie, 452 Mich 231; 551 NW2d 656 (1996). In doing so, I have come to the conclusion that the Lardie Court’s interpretation of the statute did not effectuate the intent of the Legislature. As Justice WEAVER noted in her Lardie *451 concurrence, the Lardie majority’s conclusion that the focus must be on the defendant’s “intoxicated driving” imposed an unworkable burden on the prosecution. Lardie, supra at 272 (WEAVER, J., concurring). After due consideration, I now believe that the correct interpretation of the statute is that set forth by the current majority.
I would also suggest that the Lardie majority’s conclusion that the defendant’s driving must be a “substantial” cause of the victim’s death, while inartfully worded, was likely an attempt to accentuate that the concept of proximate cause in a criminal context is a more demanding standard than that found in tort law. People v Barnes, 182 Mich 179, 196-199; 148 NW 400 (1914); LaFave & Scott, Criminal Law (2d ed), § 3.12, pp 279,282. This is true “because the potential deprivation of personal rights is obviously much more extreme in criminal, as opposed to tort, actions.” People v Harding, 443 Mich 693, 738; 506 NW2d 482 (1993) (CAVANAGH, J., concurring in part and dissenting in part). Thus, in a criminal context, “[t]he proximate cause standard requires a sufficient causal connection between the defendant’s conduct and the result of that conduct. ‘[I]t [must] appear[] that the death resulted as the natural, direct, and necessary result of the unlawful act....’” Id. at 737, quoting Barnes, supra at 196.
As our criminal jury instructions suggest, “the criminal standard for proximate cause requires a more direct causal connection than the tort concept of proximate cause.” Harding, supra at 738. Thus, in establishing causation under MCL 257.625(4), it is critical to note the following caveats:
[C]riminal liability requires a more direct causal connection than merely finding that the defendant’s actions were “a” cause. Where there are multiple independent *452 causes contributing to the victim’s injury or death, so that the defendant’s conduct alone would not have caused the death, we would not impose liability for criminal negligence unless the defendant’s conduct sufficiently dominated the other contributing factors, to be fairly deemed a criminal proximate cause, and the injury was reasonably foreseeable from the defendant’s negligence. More specifically, even though a victim’s contributory negligence is not an affir- ' mative defense, it is a factor to be considered by the trier of fact in determining whether the prima facie element of proximate cause has been proven beyond a reasonable doubt. [People v Tims, 449 Mich 83, 111; 534 NW2d 675 (1995) (Cavanagh, J., dissenting).]
Thus, the Lardie Court’s underlying premise, that proximate cause should be examined differently in a criminal case, was correct, but the current majority’s approach more accurately conveys the concept.
I dissent, however, from the majority’s decision to remand these cases for further proceedings under the rule set forth in today’s opinion because I believe that • applying the new rule, which overturns our prior interpretation of MCL 257.625(4), violates due process and infringes on the protections inherent in the Ex Post Facto Clauses of the United States and Michigan constitutions. US Const, art I, § 10; Const 1963, art 1, § 10.[1]
*453 In People v Dempster, 396 Mich 700; 242 NW2d 381 (1976), this Court recognized the longstanding rule that to avoid a deprivation of due process, “[a] criminal statute must be ‘sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties’.” Id. at 715, quoting Connally v Gen Constr Co, 269 US 385, 391; 46 S Ct 126; 70 L Ed 322 (1926). In Lardie, this Court examined MCL 257.625(4) in great detail in an attempt to clarify its meaning. We engaged in extensive endeavors of statutory construction to determine things that were not evident on the statute’s face. In particular, we examined whether the statute was meant to impose strict liability; if it was not, whether it created a general or specific intent crime; whether the Legislature intended that the prosecution prove some type of fault; and what the parameters of the statute’s causation requirement were.
The resulting judicial interpretation of the statute had, of course, the force of law, and sufficiently explained to the citizenry what type of conduct on their part would lead to criminal culpability. Through that decision, the people of this state were given “fair warning” of a prohibited type of conduct. As the United States Supreme Court has explained, “There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.” Bouie, supra at 352.
Our decision in Lardie, which had the support of six justices, was the settled state of the law at the relevant time of these defendants’ conduct. Due process precludes “retroactive application of a ‘judicial construction of a criminal statute [that] is “unexpected and *454 indefensible by reference to the law which had been expressed prior to the conduct in issue Doyle, supra at 101, quoting Bouie, supra at 354, quoting Hall, General Principles of Criminal Law (2d ed), p 61. There was nothing in Lardie that suggested that the law was in some state of flux or that this Court’s construction of the statute was less than clear or complete. No fair reading of Lardie would alert a person that Lardie would later be revisited or revised. Thus, at the time of these defendants’ conduct, any construction different than that set forth in Lardie was both unexpected and indefensible.
The majority’s assertion that “it is not ‘indefensible or unexpected’ that a court would, as we do today, overrule a case that failed to abide by the express terms of a statute,” completely eliminates the protections against ex post facto punishments and due process violations. See ante at 444 n 80. Under the majority’s reasoning, no new court opinion would ever be “indefensible or unexpected,” because the new opinion would always be “correct.” But this ignores the fact that every court believes an opinion it issues is correct, just as the Lardie Court believed in 1996, or it would not issue the opinion.
Further, the majority’s reasoning imposes on our citizenry the untenable burden of guessing and predicting when one court might overturn a prior court’s settled interpretation of a statute. I find such a result in grave conflict with the notions of due process and, thus, fatally flawed.
As such, I disagree that these defendants must again undergo the criminal process under our new interpretation of what was, at the relevant time, settled law. Such a ruling violates the fundamental principles of due process and subjects defendants to ex post facto pun *455 ishment. While the prosecution had a more difficult burden under Lardie, today’s decision lessens that burden, making our new interpretation an unforeseeable judicial expansion of a criminal statute. Subjecting defendants to a new rule that increases the chance of culpability, when their conduct was committed when the old rule was settled law, is a clear violation of defendants’ constitutional rights.
Accordingly, I would affirm the district court’s dismissal of defendant Large’s case because the district court found that, under Lardie, probable cause that defendant committed a crime was nonexistent. The district court did not abuse its discretion in finding so. I would, though, remand defendant Schaefer’s case for a new trial. On remand, I would instruct the trial court to give the jury instruction to which defendant Schaefer was entitled at his original trial.

 Although the Ex Post Facto Clauses do not directly apply to the judiciary, People v Doyle, 451 Mich 93, 99; 545 NW2d 627 (1996), citing Marks v United States, 430 US 188; 97 S Ct 990; 51 L Ed 2d 260 (1977), the “principles are applicable to the judiciary by analogy through the Due Process Clauses of the Fifth and Fourteenth Amendments.” Doyle, supra at 100, citing Bouie v City of Columbia, 378 US 347; 84 S Ct 1697; 12 L Ed 2d 894 (1964); see also People v Stevenson, 416 Mich 383, 395; 331 NW2d 143 (1982); People v Dempster, 396 Mich 700, 714-718; 242 NW2d 381 (1976). For the purposes of my analysis, I consider the concepts inextricably intertwined. When a defendant is deprived of due process, and, thus, is subjected to a punishment not available at the time of his or her conduct, this treatment is precisely what is contemplated, and prohibited, under ex post facto principles.