WOLL v ATTORNEY GENERAL

PEOPLE v POSNER

PEOPLE v KEANE

Docket Nos. 61257, 60809, 60810. Argued April 3, 1979 (Calendar Nos.
7, 8).—Decided October 3, 1980. Order on motion for rehearing
*post,* 551.

Lawyers who have been indicted for solicitation of personal
injury claims challenge the constitutionality of the statute
which imposes criminal liability for that act and the applica-
tion of the statute to solicitation of workers' compensation
claims.

Arthur S. Woll brought an action against the Attorney General
and the Wayne County Prosecuting Attorney seeking a declara-
tory judgment that the solicitation statute unconstitutionally
fails to give adequate notice of the conduct prohibited, infringes
on protected areas of free speech, and confers excessive discre-
tion on governmental authorities. Woll, who alleged that he
and his law firm represent clients in personal injury matters
including workers' compensation claims and that a grand jury.
was then inquiring into his activities, also sought to have the
statute construed as inapplicable to workers' compensation
claims. The plaintiff was indicted by the grand jury for solicita-
tion of personal injury claims, conspiracy to solicit such claims,
obstruction of justice, and conspiracy to obstruct justice. The
Wayne Circuit Court, Horace W. Gilmore, J., granted judgment
for the plaintiff on the ground that the statute denied him
equal protection of the law by its application to solicitation of

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 21 Am Jur 2d, Criminal Law § 17.
  73 Am Jur 2d, Statutes § 295 *et seq.*
[2] 73 Am Jur 2d, Statutes § 296.
[3, 4, 7, 15-18] 7 Am Jur 2d (Rev), Attorneys at Law §§ 62-66.
[4, 5] "Ambulance chasing" or similar solicitation of personal injury
  cases as ground for disbarment, suspension, or other disciplinary
  action. 67 ALR2d 859.
[8-13] 7 Am Jur 2d (Rev), Attorneys at Law § 63.
  16 Am Jur 2d, Constitutional Law § 746 *et seq.*
[14-18] 16 Am Jur 2d, Constitutional Law § 223.

personal injury actions but not to solicitation of other actions, and that it was unconstitutionally overbroad. The Court of Appeals, D. F. Walsh, P.J., and V. J. Brennan and Beasley, JJ., reversed, holding that the "facial overbreadth" doctrine is inapplicable to a statute addressed to commercial speech and that the statute as applied to plaintiff Woll is not unconstitutional on grounds of vagueness or denial of equal protection (Docket Nos. 29914, 30051). Plaintiff Woll appeals.

Samuel Posner, Noel Keane, and others were charged with conspiracy to solicit personal injury claims. The Recorder's Court of Detroit, Henry L. Heading, J., denied motions by defendants Posner and Keane to dismiss the indictments on the ground that the solicitation statute unconstitutionally denies equal protection of the laws, fails to give adequate notice of its proscription, and is overbroad. The Court of Appeals, R. M. Maher, P.J., and N. J. Kaufman and Borchard, JJ., reversed on the issue of the overbreadth of the statute (Docket Nos. 29670, 29819). The people appeal. *Held:*

1. The rule that a general statute, such as the solicitation statute, does not apply where there is a specific statute which comprehensively addresses the subject matter, here the Worker's Disability Compensation Act, is an aid to construction which is inapplicable where there is no conflict between the statutes. The rule that a criminal statute is to be strictly construed means only that persons are entitled to fair warning that the conduct is proscribed and that the courts will not, by construction, stretch the meaning beyond the terms of the statute to include conduct which was outside of the legislative intendment. In construing a criminal statute, courts seek to determine and implement the legislative purpose. An offense is confined to the words of the statute, but they may be read naturally and given a meaning in harmony with the purpose and intent of the law as far as may be done without distortion of language.

2. The language of the solicitation statute includes the solicitation of workers' compensation claims. An injury resulting from accident undergoes no transformation when it also arises "out of and in the course of" employment; the "person injured" is nevertheless "injured as the result of an accident". An injured worker who has suffered a specific loss or who requires medical attention or is disabled from earning wages has suffered "damages" no less than if the Worker's Disability Compensation Act had not been enacted; although he seeks "compensation" rather than a money judgment, he asserts, in the words of the solicitation statute, a "claim for damages". The

argument by plaintiff Woll that the solicitation statute should not apply to workers' compensation claims because attorneys' fees in such cases are regulated by statute is not persuasive, because attorneys' fees have always been subject to judicial supervision, and contingent fees in personal injury suits are now regulated by court rule. The solicitation of automobile negligence claims appears to have been the precise evil which occasioned the enactment of the statute. However, the legislation also appears to have been directed to the protection of injured persons against importuning, the protection of defendants against those who would drum up claims, and the protection of the courts from being overloaded with claims which otherwise would not be presented. These concerns are as applicable to workers' compensation cases as they are to general personal injury litigation. Absent some evidence or a contemporaneous construction that the Legislature did not intend to include workers' compensation claims, the statute should be construed to include them. A criminal statute must provide fair warning of the conduct proscribed so that persons affected by it can make their conduct conform to the statutory requirement; fairness requires that the construction that the statute proscribes solicitation of workers' compensation claims be given prospective effect only.

3. It is contended that the solicitation statute denies equal protection of the law in that it singles out solicitation of personal injury claims, leaving all other forms of solicitation of employment by attorneys untouched. The Court is urged to apply the "strict scrutiny" ("compelling state interest") test on the ground that the statute interferes with First Amendment rights. The charges of solicitation in these cases grew out of proposed commercial transactions not involving the rights of association or political expression. The Supreme Court of the United States has cautioned against hasty application of First Amendment precedents to such speech. Although First Amendment protection has been extended to some forms of solicitation by attorneys, in-person solicitation in a commercial context is not accorded protection as a fundamental right and, hence, does not require "strict scrutiny" of the statute regulating such conduct. The test of the statute, then, is the test applied to economic legislation generally: whether the classification challenged is rationally related to a legitimate state interest. The state has legitimate interests in protecting consumers, regulating commercial transactions, maintaining standards among members of a licensed profession, and protecting defendants and the courts from the fomentation of litigation. Because

there are one or more such interests which would be furthered by this statute and the challenged classification is sufficiently related to the furtherance of each interest, there is no need to attempt to particularize which interest was in the forefront of the legislative decision.

4. Personal injury claims have, as a class, distinguishing characteristics which justify special treatment in the light of the state interests involved. There is a greater likelihood of harm to the client as the result of solicitation of personal injury claims than as the result of solicitation of other litigation. Personal injury claims are almost universally handled on a contingent fee and there is no fixed value for the claimant's injuries. The combination of these factors creates opportunities for taking advantage of the client. Also, the high volume of personal injury claims, coupled with the contingent fee system, contributes to overload of the courts, and pressures to settle claims make it impractical to insist on a disposition on the merits of all of them. Barring the solicitation of personal injury claims discourages the fomentation of litigation and is rationally related to a legitimate state interest in discouraging the bringing of marginal and nuisance claims. It is the coincidence of many factors that distinguishes personal injury claims from other litigation; pointing to particular risks of harm from solicitation of other claims or solicitation of defense of personal injury claims does not render the classification irrational.

5. The Revised Judicature Act creates a civil penalty for all solicitation by voiding the agreement, but the Legislature could properly conclude that the added deterrent of criminal liability was necessary to discourage the solicitation of personal injury claims. The presence of a potential for an indeterminate gain, a high volume of cases, and the absence of a fixed value of the claims, make the civil sanction of invalidation of the solicited agreement less efficacious in personal injury matters. Most injured persons, because they are taken to hospitals and identified, are more readily solicited than other civil litigants and generally they do not have retained legal counsel. The limitation of the criminal solicitation statute to personal injury claims bears a rational relation to the objects sought to be furthered; the lawyers in these cases are not denied equal protection of the law.

6. It is argued that the blanket prohibition of the statute against "directly or indirectly soliciting" is vague because it is overbroad, impinging on First Amendment freedoms under decisions of the Supreme Court of the United States. That court has held that the overbreadth doctrine has no application to

commercial speech of the kind involved in cases of professional advertising. An overbreadth challenge may also be raised as to associational activities and political conduct protected by the First Amendment because solicitation involves conduct as well as speech. The overbreadth of the statute as to those activities must be tested by whether it is real and substantial, in relation to the statute's plainly legitimate sweep. It appears that the overbreadth challenged is not real and substantial because the solicitation statute does not present the kind of threat to the free market in ideas and expression that justifies this exceptional approach to constitutional adjudication.

7. Any "facial" overbreadth of the solicitation statute can be cured by a limiting construction. Such a construction does not involve rewriting the statute but, rather, stating exceptions to the statute's otherwise blanket prohibition. The statute, when enacted, admitted of no exceptions, but decisions of the Supreme Court of the United States now require that some be made. Therefore, in the light of the legislative purposes of the solicitation statute, it is construed to apply only to solicitations which are done primarily to advance the pecuniary interest of a lawyer who solicits or in whose interest solicitation is committed.

8. The lawyers here cannot seriously contend that they did not have fair notice of the statute's proscription. Their conduct could legitimately be punished, and they had adequate notice that the Legislature had chosen to punish it. The due-process bar on the retrospective application of a judicial interpretation of a criminal statute operates only where there is an issue of fair notice, *i.e.*, where an ambiguous or vague statute, before its interpretation, gave inadequate guidance to the individual whose conduct is regulated. However, due process rights would be violated unless a limiting construction is applied before prosecution of these lawyers, because without benefit of a limiting construction of the solicitation statute, a person might be convicted for acts within the terms of the statute which cannot, by reason of decisions by the Supreme Court of the United States, be proscribed. Unless the trier of fact has been apprised of the limiting construction, it cannot properly be said that either its assessment of the evidence or its finding was guided by the construction. In addition, there is the risk that a belated construction may deprive a defendant of an opportunity to make out a valid defense. The indictment charging Posner and Keane with violation of the solicitation statute merely states the grand jury's conclusion, and gives no indication of the nature of the activities which the grand jury found proba-

ble cause to believe had occurred. Therefore, that indictment must be quashed, without prejudice to reindictment of Posner and Keane on the basis of the statute as it is now construed. The application of the statute as to solicitation of workers' compensation claims has been given prospective effect only; therefore, the indictment of Woll should also be dismissed, but without prejudice to his reindictment for solicitation of personal injury claims other than workers' compensation claims.

9. The solicitation statute does not apply to truthful advertising by a lawyer, but this is only a partial limiting construction. The Court has previously decided that the prophylactic measure of prohibiting in-person solicitation for pecuniary gain cannot be so broad as to prohibit all solicitation by lawyers for remuneration; the disciplinary rule against solicitation cannot reach conduct where there is no significant danger of overreaching. However, determination of the scope of state regulation of in-person solicitation for pecuniary gain should not be made without the benefit of briefing and argument by the interested parties. *Woll v Attorney General* is remanded to the Court of Appeals for further proceedings.

The indictments against Posner and Keane are dismissed; *Woll v Attorney General* is remanded to the Court of Appeals.

80 Mich App 721; 265 NW2d 23 (1978) affirmed.

79 Mich App 63; 261 NW2d 209 (1977) reversed.

1. CRIMINAL LAW — STATUTES — CONSTRUCTION.

The rule that a criminal statute is to be strictly construed means only that persons are entitled to fair warning that the conduct is proscribed and that the courts will not, by construction, stretch the meaning beyond the terms of the statute to include conduct which was outside of the legislative intendment.

2. CRIMINAL LAW — STATUTES — CONSTRUCTION.

Courts construing a criminal statute must seek to determine and implement the legislative purpose; an offense is confined to the words of the statute, but they may be read naturally and given a meaning in harmony with the purpose and intent of the law as far as may be done without distortion of language.

3. ATTORNEY AND CLIENT — BARRATRY — SOLICITATION — PERSONAL INJURY CLAIMS — WORKERS' COMPENSATION — WORDS AND PHRASES.

The language of the statute which imposes criminal liability for solicitation of personal injury claims includes solicitation of workers' compensation cases because an injured worker who has suffered a specific loss or requires medical attention or is

disabled from earning wages is a "person injured", and he has suffered "damages" no less than if the Worker's Disability Compensation Act had not been enacted; although the worker seeks compensation, rather than a money judgment for his injury, he asserts a "claim for damages" (MCL 418.101 *et seq.*, 750.410; MSA 17.237[101] *et seq.*, 28.642).

4. ATTORNEY AND CLIENT — BARRATRY — CHAMPERTY — SOLICITATION — PERSONAL INJURY CLAIMS — CRIMINAL LIABILITY — LEGISLATIVE PURPOSE.

The statute which imposes criminal liability for solicitation of personal injury claims is not limited to the precise evil which apparently occasioned its enactment, the solicitation of automobile negligence claims for contingent fee agreements; the statute was also directed to the protection of injured persons against importuning, the protection of potential defendants against those who would drum up claims and the protection of the courts from being overloaded with claims which otherwise would not be presented (MCL 750.410; MSA 28.642).

5. ATTORNEY AND CLIENT — BARRATRY — SOLICITATION — PERSONAL INJURY CLAIMS — WORKERS' COMPENSATION.

The statute which imposes criminal liability for solicitation of personal injury claims should be construed, absent some evidence of a contrary legislative intent or judicial construction, to include the solicitation of workers' compensation claims because it is within the policy underlying the statute; the risks of importuning of clients and fomentation of litigation are as applicable to workers' compensation cases as they are to general personal injury litigation (MCL 418.101 *et seq.*, 750.410; MSA 17.237[101] *et seq.*, 28.642).

6. CRIMINAL LAW — STATUTES — NOTICE.

A criminal statute must provide fair warning of the conduct proscribed so that persons affected by it can make their conduct conform to the statutory requirement.

7. ATTORNEY AND CLIENT — BARRATRY — SOLICITATION — PERSONAL INJURY CLAIMS — CRIMINAL LIABILITY — STATUTES — CONSTRUCTION.

Fairness requires that the statutory construction that the solicitation of workers' compensation claims is subject to criminal liability be given prospective effect because a different construction could have been placed upon the solicitation statute (MCL 750.410; MSA 28.642).

8. CONSTITUTIONAL LAW — EQUAL PROTECTION — ATTORNEY AND
   CLIENT — BARRATRY — SOLICITATION — CIVIL RIGHTS — FIRST
   AMENDMENT — COMMERCIAL SPEECH.

   The contention that the statute which imposes criminal liability
   for solicitation of personal injury claims, but which does not
   prohibit other solicitation of employment by attorneys, denies
   equal protection of the law should be tested by whether the
   statutory classification is rationally related to a legitimate state
   interest; although First Amendment protection has been ex-
   tended to some forms of solicitation by attorneys, in-person
   solicitation in a commercial context is not accorded protection
   as a fundamental right and, hence, does not require strict
   scrutiny of a statute regulating such conduct where it has been
   challenged on equal protection grounds (US Const, Am I, Am
   XIV; Const 1963, art 1, § 2; MCL 750.410; MSA 28.642).

9. CONSTITUTIONAL LAW — EQUAL PROTECTION — ATTORNEY AND
   CLIENT — SOLICITATION — PERSONAL INJURY CLAIMS.

   Attorneys charged with criminal liability for solicitation of per-
   sonal injury claims are not denied equal protection by the
   statutory classification which does not prohibit other forms of
   solicitation because it is rationally related to the legitimate
   interests of the state in protecting consumers, regulating com-
   mercial transactions, maintaining standards among members of
   a licensed profession, and protecting defendants and the courts
   from the fomentation of litigation (US Const, Am XIV; Const
   1963, art 1, § 2; MCL 750.410; MSA 28.642).

10. CONSTITUTIONAL LAW — EQUAL PROTECTION — STATUTES — STATE
    INTEREST.

    Decision of a challenge to a statutory classification on equal
    protection grounds requires identification of the state interest
    sought to be advanced by the challenged statute; there is,
    however, no need to attempt to particularize which of several
    legitimate state interests was in the forefront of the legislative
    judgment where the state interests would all be furthered by
    the statute and the challenged classification is sufficiently
    related to the furtherance of each interest (US Const, Am XIV;
    Const 1963, art 1, § 2).

11. CONSTITUTIONAL LAW — EQUAL PROTECTION — ATTORNEY AND
    CLIENT — BARRATRY — SOLICITATION — PERSONAL INJURY
    CLAIMS.

    Personal injury claims have, as a class, distinguishing character-
    istics which justify special treatment by a statute prohibiting
    solicitation of such claims in light of the state interests in-

volved; because the coincidence of many factors distinguishes personal injury claims from other litigation, the fact that one may point to particular risks of harm from solicitation of other claims or of defense of personal injury claims does not render the statutory classification irrational (US Const, Am XIV; Const 1963, art 1, § 2; MCL 750.410; MSA 28.642).

12. CONSTITUTIONAL LAW — EQUAL PROTECTION — ATTORNEY AND CLIENT — BARRATRY — CHAMPERTY — SOLICITATION — CRIMINAL LIABILITY — PERSONAL INJURY CLAIMS.

The Legislature could properly conclude that the deterrent of criminal liability in addition to a civil penalty which voids any solicited agreement for the professional employment of an attorney was necessary to discourage solicitation of personal injury claims but not the solicitation of other legal business; the civil sanction of invalidation of the solicited agreement is less efficacious in personal injury matters, which have a potential for high volume and indeterminate gain, and most injured persons are more readily identified and solicited than other civil litigants and generally do not have retained legal counsel (US Const, Am XIV; Const 1963, art 1, § 2; MCL 600.919, 750.410; MSA 27A.919, 28.642).

13. CONSTITUTIONAL LAW — STATUTES — OVERBREADTH — FIRST AMENDMENT — COMMERCIAL SPEECH — ATTORNEY AND CLIENT — SOLICITATION.

A contention that the statute which imposes a blanket prohibition against "directly or indirectly soliciting" personal injury claims is overbroad on its face, impinging upon First Amendment protection given truthful advertising and in-person solicitation for pecuniary gain, must be rejected because the overbreadth doctrine has no application to commercial speech of the kind involved in such acts (US Const, Am I; MCL 750.410; MSA 28.642).

14. CRIMINAL LAW — STATUTES — CONSTRUCTION — CONSTITUTIONAL LAW.

It is no intrusion on the power of the Legislature for a court to engraft on a statute's broad prohibition a statement of exceptions where the limiting construction does no violence to the Legislature's central intent and where without such exceptions the statute must fall as being unconstitutionally overbroad (US Const, Am I).

15. ATTORNEY AND CLIENT — SOLICITATION — CRIMINAL LIABILITY — CONSTITUTIONAL LAW — FIRST AMENDMENT — STATUTES — OVERBREADTH.

The prohibition of the statute which imposes criminal liability for

solicitation of personal injury claims is construed to apply only to solicitations which are done primarily to advance the pecuniary interest of a lawyer who solicits or in whose interest solicitation is committed; the statute when enacted admitted of no exceptions, but decisions concerning First Amendment protection of associational interests and political expression now require that some exceptions be made (US Const, Am I; MCL 750.410; MSA 28.642).

16. CRIMINAL LAW — STATUTES — CONSTRUCTION — DUE PROCESS — ATTORNEY AND CLIENT — SOLICITATION.

The statute which imposes criminal liability for solicitation of personal injury claims, although it must be construed to avoid overbreadth, provides adequate warning that it proscribes in-person solicitation of the kind that the Legislature can prohibit under decisions of the Supreme Court of the United States; the statute when construed to cure the overbreadth can be applied retroactively to such in-person solicitation within the bounds of due process, because attorneys charged with solicitation cannot contend that they did not have fair notice of the statute's proscription (US Const, Am I, Am XIV; Const 1963, art 1, § 17; MCL 750.410; MSA 28.642).

17. CRIMINAL LAW — STATUTES — CONSTRUCTION — DUE PROCESS — INDICTMENT AND INFORMATION.

The Due Process Clause requires that before an attorney may be prosecuted for solicitation of personal injury claims he must be indicted for acts which fall within the limiting construction of the solicitation statute that it proscribes only certain kinds of solicitation; unless the trier of fact has been apprised of the limiting construction, it cannot properly be said that either its assessment of the evidence or its finding was guided by the limiting construction, and there is the risk that a belated limiting construction may deprive a defendant of an opportunity to make out a valid defense (US Const, Am I, Am XIV; Const 1963, art 1, § 17; MCL 750.410; MSA 28.642).

18. ATTORNEY AND CLIENT — BARRATRY — CHAMPERTY — SOLICITATION — CONSTITUTIONAL LAW.

The state may, as a prophylactic measure, prohibit in-person solicitation of clients by lawyers for pecuniary gain where there is a risk of overreaching, undue influence or other evils; however, the prophylactic measure cannot be so broad as to prohibit all solicitation by lawyers for remuneration, and the courts must define what circumstances can be said to present

risks of the evils that the state may legitimately attempt to avoid (US Const, Am I, Am XIV; MCL 750.410; MSA 28.642).

*Barris, Golob & DuMouchel, P.C.,* for plaintiff Woll.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William L. Cahalan,* Prosecuting Attorney.

*Patrick J. Foley,* Director, Wayne County Organized Crime Task Force, and *Paul S. Teranes,* Assistant Prosecuting Attorney, for the people.

*Thomas L. Casey,* Assistant Attorney General, for defendant Attorney General.

*Theodore Stephens,* Deputy Chief, Civil Department, and *Rheo C. Marchand,* Assistant Prosecuting Attorney, for defendant Wayne County Prosecutor.

*Posner, Posner & Posner* for defendant Posner.

*Lippitt, Harrison, Perlove, Friedman & Zack* (by *Robert S. Harrison* and *Bernard Feldman)* for defendant Keane.

LEVIN, J. A statute makes it a misdemeanor to solicit a person injured as a result of an accident for the purpose of making a claim for damages or prosecuting an action based on the injury.[1] Woll,

---

[1] "A person, firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or any of the officers, agents, servants, employees, or members of any such person, firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or of any division, bureau or committee of that association or organization, either incorporated or unincorporated, who shall directly or indirectly, individually or by agent, servant, employee, or member, solicit a person injured as the result of an accident, his administrator, executor, heirs or assigns, his guard-

Posner and Keane, who are lawyers, were indicted under the statute. They contend that the statute is void for vagueness and because it deprives them of equal protection of the law. Woll further contends that the statute is inapplicable to workers' compensation cases.

We hold:

1) The Legislature intended that the statute apply to workers' compensation cases, at least where the claim arises out of an accident. Because of ambiguity in the expression the statute did not, however, provide the notice requisite for a criminal statute that workers' compensation claims were within its ambit. We therefore give prospective effect only to our construction that the statute applies to the solicitation of workers' compensation cases arising out of an accident.

2) The limitation to prosecution of personal injury claims does not deny equal protection of the law. The Legislature could properly conclude that solicitation of personal injury claims presents a

ian, or members of the family of the injured person for the purpose of representing that person in making a claim for damages or prosecuting an action or causes of action arising out of a personal injury claim against any other person, firm or corporation, or to employ counsel for the purpose of that solicitation, is guilty of a misdemeanor, and shall upon conviction thereof, if a natural person, be punished by a fine not to exceed $500.00, or by imprisonment for a term not to exceed 6 months, or both. The same penalties shall apply upon conviction to a member of a copartnership, or an officer or agent of a corporation, association or other organization, or an officer or agent, who shall consent to, participate in, or aid or abet a violation of this section upon the part of the copartnership of which he is a member, or of the corporation, association or organization of which he is such an officer or agent. A contract entered into as a result of such solicitation is void. This subsection shall not affect an unsolicited contract entered into by a person, firm, or corporation with an attorney duly admitted to practice law in this state." MCL 750.410(1); MSA 28.642(1).

The foregoing reflects amendments made by 1975 PA 125 which appear to be stylistic and not substantive. Posner and Keane were indicted for violation of, and Woll's complaint speaks to, the statute as it read before the 1975 amendments.

risk of harm significantly different from solicitation of other legal business, including personal injury defense, and that a special criminal disincentive was needed to discourage such behavior.

3) While the statute may be unconstitutional because of overbreadth, the overbreadth can be cured by a limiting construction. The statute when so construed can be applied retroactively to the complained-of conduct, because, although the statute is overbroad, it provided adequate warning that it proscribed in-person solicitation of the kind that the Legislature can prohibit.

4) The indictments must, however, be dismissed because the grand juries' assessment of the evidence had not theretofore been circumscribed by a construction limiting the grand juries' discretion; the grand juries, applying a literal construction of the statute, may have indicted and an amended indictment may have been filed for conduct protected by the First Amendment. Since the statute provided adequate warning that it proscribed conduct that can be prohibited, dismissal is without prejudice to reindictment after a limiting construction is placed on the statute.

5) None of the parties have considered in their briefs what would constitute a proper limiting construction. Woll sought a declaratory judgment. We remand his case to the Court of Appeals so that it can determine a limiting construction consistent with the First Amendment.

I

The Court of Appeals held the statute unconstitutional in *Posner* and *Keane* and constitutional in *Woll.* We granted leave to appeal to resolve the

conflict, limited to whether the statute is unconstitutionally overbroad in that it infringes protected areas of freedom of speech and expression, and whether it violates the equal protection guarantees of the Michigan and United States constitutions and, in *Woll,* additionally, to whether the statute applies to workers' compensation cases.

## *Posner and Keane*

Posner and Keane were indicted by a citizens' grand jury on a charge of conspiracy to solicit personal injury claims. After preliminary examination they were bound over for trial and an amended indictment was filed.

The Recorder's Court denied motions to dismiss which alleged that the statute is unconstitutional because it denies equal protection and is vague in failing to give adequate notice of its proscription and in being overbroad.

The Court of Appeals granted interlocutory appeal. Without reaching the equal protection claim, it held that the statute is unconstitutionally overbroad, and dismissed the indictment.[2]

## *Woll*

Woll filed a complaint for declaratory judgment and injunctive relief against the Attorney General and Wayne County Prosecuting Attorney. He alleged that he is an attorney engaged in a personal injury and workers' compensation practice, that an actual controversy exists because any attorney engaged in such a practice would be liable for

---

[2] *People v Posner,* 79 Mich App 63; 261 NW2d 209 (1977).

prosecution under the statute[3] and, additionally, because there was already underway an inquiry into his activities by a law enforcement agency.[4]

Woll claimed that the statute is unconstitutional because it denies equal protection of the law and because it is vague in i) failing to provide adequate notice of the conduct prohibited, ii) infringing on protected areas of speech (overbreadth) and iii) conferring excess discretion on governmental authorities. Woll also sought to have the statute, if constitutional, construed as inapplicable to workers' compensation cases.

Within the month, Woll was indicted by a citizens' grand jury on charges of solicitation of personal injury claims, conspiracy to solicit personal injury claims, obstruction of justice and conspiracy to obstruct justice. The following day the Attorney General filed a counterclaim in Woll's declaratory judgment action asking the court to construe the

[3] "That an actual controversy exists between the plaintiff and the defendants herein in that any attorney in the State of Michigan who is involved in the representation of clients in personal injury actions and work[ers'] compensation cases, as the plaintiff is, would be liable for prosecution under the solicitation statute, irrespective of how scrupulously the attorney would attempt to conform his conduct to the said statute, in that the statute is so vague, overbroad, and infringes upon protected areas of freedom of speech and expression to the extent that it makes it virtually impossible for a person of reasonable and ordinary intelligence to conform his conduct to the statute as is more fully described * * * *infra.*"

[4] "That an additional actual controversy exists between plaintiff and defendants by reason of the fact that within the last several weeks, there has been, and continues to be, an ongoing inquiry by a certain state law enforcement body, the existence, nature and areas of activities of which are well known to the defendants herein beyond peradventure, involving plaintiff, which matters are presumptively protected by the secrecy provisions of the Michigan Code of Criminal Procedure, namely, MCL 767.4a; MSA 28.944(1), so that plaintiff will *refrain from detailing the nature of such activities in this complaint,* but will, of course, disclose the scope thereof, insofar as known to him, to the court *in camera* should defendants deny the existence of an actual controversy in their answers to this complaint."

statute in "a manner consistent" with the constitutions of the United States and Michigan.[5]

The circuit court held that the statute denied equal protection of the law and was unconstitutionally overbroad. The Court of Appeals held that the facial overbreadth doctrine is inapplicable to a statute addressed to commercial speech[6] and that the statute as applied to Woll is not unconstitutional on vagueness or equal protection grounds.[7]

## II

Woll contends that the statute does not prohibit the solicitation of workers' compensation claims. He argues that it "should be construed in a narrow manner, consistent with the doctrine that penal statutes are to be strictly construed, so that the [statutory] term 'person injured as the result of an accident' does not apply to workers' compensation cases".

## A

The statute applies to "[a] person * * * who shall * * * solicit a person injured as the result of an accident * * * for the purpose of representing that person in making a claim for damages or

---

[5] "That assuming *arguendo* that plaintiff has standing and this court has jurisdiction, this honorable court is respectfully urged to construe the solicitation statute in a manner consistent with both the constitutions of the United States and the State of Michigan, that the solicitation statute may not be applied to impinge upon protected areas of free speech and expression, but may be applied to prohibit the solicitation of persons injured for the purpose of representing such person in making a claim for damages or prosecuting any action or causes of action arising out of any personal injury claim."

[6] *Woll v Attorney General*, 80 Mich App 721, 733; 265 NW2d 23 (1978).

[7] *Id.*, p 736.

prosecuting an action or causes of action arising out of a personal injury claim * * *".[8]

Woll contends that the Worker's Disability Compensation Act[9] is a specific statute which comprehensively addresses the entire subject matter of workers' compensation claims and a general statute such as the solicitation statute does not apply. This aid to construction is inapplicable[10] where, as here, there is no conflict between the statutes.

Similarly, while a criminal statute is strictly construed,[11] we understand that to mean only that persons are entitled to fair warning that the conduct is proscribed and that the courts will not by construction stretch the meaning beyond the terms of the statute to include conduct outside the legislative intendment. "The rule of strict construction confines an offense to the words of the statute, but it permits the words not only to be read naturally but to be given a meaning in harmony with the purpose and intent of the law as far as may be done without distortion of language."[12] In construing a criminal statute, as any other statute, we seek to determine and implement the legislative purpose.

## B

As originally enacted in 1912,[13] the Worker's

---

[8] The circuit judge in *Woll* declared that the statute only applies to solicitation of a person actually injured. We reject that construction as we are persuaded that the Legislature sought to proscribe the solicitation of the groundless as well as meritorious personal injury claim.

[9] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

[10] *State Highway Comm'r v Detroit City Controller,* 331 Mich 337; 49 NW2d 318 (1951).

[11] *People v Goulding,* 275 Mich 353; 266 NW 378 (1936).

[12] *Hightower v Detroit Edison Co,* 262 Mich 1, 7; 247 NW 97; 86 ALR 509 (1933). Similarly, see *People v Hall,* 391 Mich 175, 189-190; 215 NW2d 166 (1974).

[13] 1912 (1st Ex Sess) PA 10.

Disability Compensation Act covered "accidental" injury.[14] The solicitation statute, enacted in 1925,[15] speaks of solicitation of a person "injured as the result of an accident". Since the workers' compensation statute covered accidental injury, the language of the solicitation statute in terms includes the solicitation of workers' compensation claims. An injury resulting from accident undergoes no transformation when it also arises "out of and in the course of" employment; the "person injured" is nevertheless "injured as the result of an accident".

The term "personal injury claim" describes a workers' compensation claim[16] as well as a claim in tort.

While "action" or "causes of action" sounds in common-law pleading, the alternative phrase of the solicitation statute, "in making a claim for damages", can mean either a claim in tort or for workers' compensation. An injured worker who has suffered a specific loss or who requires medical attention or is disabled from earning wages has suffered "damages" no less than if the workers' compensation act had not been enacted and his claim for recovery could only be asserted in a court of law. Although a worker seeks "compensation" rather than a money judgment, he asserts a "claim for damages".

Woll argues that whatever rationales support the general prohibition, they are inapposite to workers' compensation because attorneys' fees in workers' compensation cases are supervised.[17] But

---

[14] *Adams v Acme White Lead & Color Works,* 182 Mich 157; 148 NW 485 (1914).

[15] 1925 PA 280.

[16] The workers' compensation statute provides that compensation shall be payable in respect to "[a]n employee, who receives a *personal injury* arising out of and in the course of his employment * * *". MCL 418.301(1); MSA 17.237(301)(1) (emphasis supplied).

[17] MCL 418.858; MSA 17.237(858).

attorney fees have always been subject to judicial supervision and contingent fees in personal injury suits are now regulated by court rule.[18]

There is no contemporaneous legislative history or construction by a court on the question whether the solicitation statute applies to workers' compensation cases. Because it appears to have been primarily directed to the solicitation of claims brought in a court of law its meaning could be confined to the solicitation of such claims.

We perceive, however, a larger legislative purpose, one directed to the protection of injured persons against importuning, the protection of defendants against those who would drum up claims and the protection of the judicial system from being overloaded with claims which otherwise would not be presented. If the scope of the statute were limited to the precise evil which apparently occasioned its enactment (the solicitation of automobile negligence claims), it arguably would not apply to the solicitation of cases which were not major sources of litigation or the entitlements for which did not exist at the time of its enactment, *e.g.*, product liability and malpractice cases and no-fault automobile actions against an insurer.

The risks of importuning of clients and fomentation of litigation are as real in the workers' compensation area as in general personal injury litigation. Crowded dockets are a problem in the workers' compensation field as well as in general personal injury litigation. As with other personal injury claims, insubstantial workers' compensation claims have coercive value as "nuisance suits".

We are persuaded that, absent some evidence or a contemporaneous construction that the Legisla-

_____
[18] GCR 1963, 928.

ture did not intend to include the solicitation of personal injury claims for which recovery could be sought under the workers' compensation statute, we should construe the solicitation statute to include the solicitation of such claims because they are within the policy underlying the statute.

While we conclude that the statute is directed to the solicitation of workers' compensation claims as well as tort claims, we concede that a different construction could be placed upon the statute. It is especially important that a criminal statute provide fair warning of the conduct proscribed so that persons affected can conform their conduct to the statutory requirement. Fairness requires that the construction that the solicitation of workers' compensation claims is included be given prospective effect only.[19]

### III

We address next the contention that the solicitation statute denies equal protection of the law[20] in that it singles out solicitation of personal injury claims, leaving all other forms of solicitation of employment by attorneys untouched.

### A

When a statute is challenged on equal protection grounds, the first and, some have said, the decisive question, is the appropriate test—minimum rationality, means scrutiny or strict scrutiny.

The Court of Appeals in *Woll* (the issue was not reached in *Posner* and *Keane)* applied the tradi-

---

[19] *People v Dempster,* 396 Mich 700; 242 NW2d 381 (1976); *People v Neumayer,* 405 Mich 341, 368; 275 NW2d 230 (1979); *People v Bloss (On Remand),* 394 Mich 79, 81; 228 NW2d 384 (1975).

[20] US Const, Am XIV; Const 1963, art 1, § 2.

tional minimum rationality test as did the judges who first considered the challenge. Under that test a statute will be upheld if the challenged classification bears a rational relation to a legitimate state interest.[21] We are urged to apply the "strict scrutiny" ("compelling state interest") test,[22] on the ground that the statute interferes with First Amendment rights.

It is not contended that "strict scrutiny" is triggered whenever a statute regulates speech or conduct within the scope of the First Amendment.[23] Rather, it is claimed that the classification represents a direct interference with protected freedoms because it is based on the content of the speech—a proposal to provide representation in prosecuting a personal injury claim is banned, but a proposal to provide representation in any other sort of lawsuit is permitted.

In *Police Dep't of Chicago v Mosley*[24] the United

---

[21] " 'When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. * * * Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.' " *Friedman v Rogers,* 440 US 1, 17; 99 S Ct 887; 59 L Ed 2d 100 (1979), quoting *New Orleans v Dukes,* 427 US 297, 303; 96 S Ct 2513; 49 L Ed 2d 511 (1976).

[22] Under this test, the classification must be necessary to further a compelling state interest. See Note, *Developments in the Law: Equal Protection,* 82 Harv L Rev 1065 (1969).

[23] Such an argument would surely fail. Oklahoma's "Hatch Act", prohibiting state employees from engaging in partisan political activity, was challenged in *Broadrick v Oklahoma,* 413 US 601, 607, fn 5; 93 S Ct 2908; 37 L Ed 2d 830 (1973), on the equal protection ground that the prohibition applied only to classified state employees. The Court dismissed the challenge in a footnote, saying "the legislature must have some leeway in determining which of its employment positions require restrictions". A standard of "some leeway" is hardly "strict scrutiny".

[24] *Police Dep't of Chicago v Mosley,* 408 US 92, 95; 92 S Ct 2286; 33 L Ed 2d 212 (1972).

States Supreme Court indicated that the state must show a compelling state interest to justify discrimination based on content.[25] But the activity regulated in *Mosley*—protest through peaceful picketing—lies near the core of First Amendment

[25] Mosley sought to enjoin enforcement of an ordinance that prohibited picketing within 150 feet of any school while it is in session, but exempted "peaceful picketing of any school involved in a labor dispute". The Court noted that "[t]he central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter", *id.,* p 95, and held that:

"[S]elective exclusions from a public forum must be carefully scrutinized. Because picketing plainly involves expressive conduct within the protection of the First Amendment * * * discriminations among pickets must be tailored to serve a substantial governmental interest." *Id.,* pp 98-99.

One might even read *Mosley* as announcing a per se rule of invalidity: "The regulation 'thus slip[s] from the neutrality of time, place, and circumstance into a concern about content.' This is never permitted." *Id.* It has not, however, been so read.

In *Young v American Mini Theatres,* 427 US 50, 65-66; 96 S Ct 2440; 49 L Ed 2d 310 (1976), *reh den* 429 US 873; 97 S Ct 191; 50 L Ed 2d 155 (1976), the United States Supreme Court upheld a Detroit ordinance regulating the location of movie theaters based on the content of the films displayed at the theaters. Justice Stevens, speaking for a plurality of the Court, made the following observations regarding the *Mosley* decision:

"This statement, and others to the same effect, read literally and without regard for the facts of the case in which it was made, would absolutely preclude any regulation of expressive activity predicated in whole or in part on the content of the communication. But we learned long ago that broad statements of principle, no matter how correct in the context in which they are made, are sometimes qualified by contrary decisions before the absolute limit of the stated principle is reached. When we review this Court's actual adjudications in the First Amendment area, we find this to have been the case with the stated principle that there may be no restriction whatever on expressive activity because of its content."

Justice Powell, the fifth member of the Court majority, did not join that section of Justice Stevens' opinion. In his concurring opinion, though, he also found that *Mosley* did not control:

"*Respondents would have us mechanically apply the doctrines developed in other contexts.* But this situation is *not analogous to cases involving expression in public forums or to those involving individual expression* or, indeed, to any other prior case. The unique situation presented by this ordinance calls, as cases in this area so often do, for a careful inquiry into the competing concerns of the State and the interests protected by the guarantee of free expression." *Id.,* p 76 (emphasis supplied).

guarantees. The Court's concern about government interference with the free flow of ideas was central to the Court's decision:

"To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' "[26]

The solicitation statute simply does not implicate the interests the Court protected in *Mosley.*

It is urged, citing *Button,*[27] *Trainmen,*[28] *United Mine Workers,*[29] and *United Transportation Union,*[30] that equally important First Amendment interests are involved in the regulation of attorney solicitation. In *Button* the civil rights litigation solicited was itself a form of political expression. In the other three cases the associational rights of the clients, members of labor unions, were involved. Here, however, it is apparent that the solicitation charges grew out of proposed commercial transactions not involving associational rights or political expression.

In commercial speech, the speaker "does not wish to editorialize on any subject, cultural, philosophical, or political. He does not wish to report

[26] *Mosley, supra,* pp 95-96.

[27] *National Ass'n for the Advancement of Colored People v Button,* 371 US 415; 83 S Ct 328; 9 L Ed 2d 405 (1963).

[28] *Brotherhood of Railroad Trainmen v Virginia State Bar,* 377 US 1; 84 S Ct 1113; 12 L Ed 2d 89 (1964).

[29] *United Mine Workers of America v Illinois State Bar Ass'n,* 389 US 217; 88 S Ct 353; 19 L Ed 2d 426 (1967).

[30] *United Transportation Union v State Bar of Michigan,* 401 US 576; 91 S Ct 1076; 28 L Ed 2d 339 (1971).

any particular newsworthy fact, or to make generalized observations even about commercial matters."[31] The United States Supreme Court has cautioned against hasty application of First Amendment precedents to such speech.[32] It has also indicated that in-person solicitation merits even less protection than other forms of commercial speech.[33]

In light of the lesser protection given to solicitation, we conclude that *Mosley* does not require "strict scrutiny" of the solicitation statute.[34] Although First Amendment protection has been extended to some forms of solicitation by attorneys, in-person solicitation in a commercial context is not accorded protection as a fundamental right[35] and, hence, does not trigger strict scrutiny of a statute regulating such conduct when it has been challenged on equal protection grounds. We hold that the statute should be tested against the ra-

[31] *Virginia State Board of Pharmacy v Virginia Citizens Consumer Council,* 425 US 748, 761; 96 S Ct 1817; 48 L Ed 2d 346 (1976).

[32] "Because of the special character of commercial speech and the relative novelty of First Amendment protection for such speech, we act with caution in confronting First Amendment challenges to economic legislation that serves legitimate regulatory interests. Our decisions dealing with more traditional First Amendment problems do not extend automatically to this as yet uncharted area. See, *e.g.* [*Ohralik v Ohio State Bar Ass'n,* 436 US 447, 462, fn 20; 98 S Ct 1912; 56 L Ed 2d 444 (1978)] (overbreadth analysis not applicable to commercial speech). When dealing with restrictions on commercial speech we frame our decisions narrowly, 'allowing modes of regulation [of commercial speech] that might be impermissible in the realm of noncommercial expression.'" *Friedman v Rogers,* fn 21 *supra,* p 11, fn 9.

[33] "[I]n-person solicitation of professional employment by a lawyer does not stand on a par with truthful advertising about the availability and terms of routine legal services, let alone with forms of speech more traditionally within the concern of the First Amendment." *Ohralik v Ohio State Bar Ass'n,* 436 US 447, 455; 98 S Ct 1912; 56 L Ed 2d 444 (1978), *reh den* 439 US 883; 99 S Ct 226; 58 L Ed 2d 198 (1978).

[34] See discussion of *Young v American Mini Theatres,* fn 25 *supra.*

[35] *Ohralik, supra.*

tional relationship standard applicable to economic legislation generally: The inquiry is whether "the classification challenged [is] rationally related to a legitimate state interest".[36]

## B

It is asserted that the solicitation statute is unconstitutional under any equal protection standard because the special treatment of personal injury claims is arbitrary and capricious. We conclude that the classification is rationally related to interests which the state may legitimately advance.

We turn first to an identification of the interests sought to be advanced by the solicitation statute.

In *Ohralik v Ohio State Bar Ass'n,* 436 US 447, 460; 98 S Ct 1912; 56 L Ed 2d 444 (1978), the United States Supreme Court said that "[i]n addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions".[37] It continued that protection of the public from those aspects of solicitation involving "fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct' " is a legitimate

---

[36] *Friedman v Rogers,* fn 21 *supra,* p 17.

[37] "The state interests implicated in this case are particularly strong. In addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions.

\* \* \*

"[A]ppellant has conceded that the State has a legitimate and indeed 'compelling' interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct.' \* \* \* *We agree that protection of the public from these aspects of solicitation is a legitimate and important state interest." Ohralik v Ohio State Bar Ass'n, supra,* pp 460, 462.

state interest.[38] The Court said that in-person solic-
itation may "provide a one-sided presentation" and
"encourage speedy and perhaps uninformed deci-
sionmaking" without "an opportunity for compari-
son or reflection" and "critical comparison of the
'availability, nature, and prices' of legal services."[39]
The Court also said that there is a risk that the
lawyer's pecuniary self-interest will interfere with
his exercise of judgment on behalf of his client.[40]

In *Kelley v Judge of Recorder's Court of Detroit,*
239 Mich 204, 212-213; 214 NW 316; 53 ALR 273
(1927), in rejecting an equal protection challenge
to the solicitation statute, this Court did not specif-
ically identify the interest sought to be advanced
by the statute. It did indicate, however, that per-
sonal injury claims were "inviting to litigation and
exploitation".

*Hightower v Detroit Edison Co,* 262 Mich 1, 7-8;
247 NW 97; 86 ALR 509 (1933), subsequently listed
the following evils associated with "ambulance
chasing": "(1) fomenting litigation with resultant
burdens on the courts and public purse, (2) subor-

[38] *Id.,* p 462.

[39] *Id.,* pp 457-458.

[40] "A lawyer who engages in personal solicitation of clients may be
inclined to subordinate the best interests of the client to his own
pecuniary interests. Even if unintentionally, the lawyer's ability to
evaluate the legal merit of his client's claims may falter when the
conclusion will affect the lawyer's income. A valid claim might be
settled too quickly, or a claim with little merit pursued beyond the
point of reason. These lapses of judgment can occur in any legal
representation, but we cannot say that the pecuniary motivation of
the lawyer who solicits a particular representation does not create
special problems of conflict of interest." *Id.,* p 461, fn 19.

In *Hightower v Detroit Edison Co,* 262 Mich 1; 247 NW 97 (1933),
we observed that one of the evils associated with ambulance chasing
was:

"[D]efrauding of injured persons having proper causes of action, but
ignorant of legal rights and court procedure, by means of contracts
which retain exorbitant percentages of recovery and illegal charges
for court costs and expenses and by settlements made for quick
return of fees and against the just rights of the injured persons."

nation of perjury, (3) mulcting of innocent persons by judgments, upon manufactured causes of action and perjured testimony, and by settlements to buy peace, and (4) defrauding of injured persons having proper causes of action, but ignorant of legal rights and court procedure, by means of contracts which retain exorbitant percentages of recovery and illegal charges for court costs and expenses and by settlements made for quick return of fees and against the just rights of the injured persons."[41]

In sum, the United States Supreme Court, in *Ohralik,* identified as state interests protecting consumers, regulating commercial transactions and maintaining standards among members of the licensed professions, and this Court, in *Hightower,* spoke as well of the impact of solicitation on defendants and the judicial system resulting from drummed-up litigation.

Neither *Ohralik* nor *Hightower* was an equal protection case; the challenge in *Ohralik* was on First Amendment grounds and *Hightower* presented a constructional issue. While equal protection analysis requires us to identify the state interest sought to be advanced by the challenged statute, since we decide that there are one or more legitimate state interests which would be furthered by this statute and that the challenged classification is sufficiently related to the furtherance of each interest, we see no need to attempt to particularize which interest—the protection of the client against overreaching by soliciting lawyers or the protection of defendants and the justice system from the fomentation of litigation—was in the forefront of the legislative decision.

[41] See also *Ohralik, supra,* p 461.

# C

We turn to the question whether the limitation to personal injury claims is sufficiently related to the furtherance of the state interests involved.

We conclude that personal injury claims as a class have distinguishing characteristics which justify special treatment in light of the state interests involved.

In *Kelley v Recorder's Court Judge* this Court, in rejecting an equal protection challenge to this statute, made observations concerning the special attributes of personal injury claims which are also pertinent today:

"[T]here exists a marked difference between injuries inflicted on the person and injuries done to property, plainly recognizable in fact and reasonably distinguishable in law. Property, whether personal or real, has as a rule some fairly determinable market value susceptible of definite proof, within limits beyond which neither evidence nor expectation can range. Market value for personal injuries is unknown. The measure of damages and rules of proof are distinctly different in injury to property and personal injury cases. Pain and suffering, disfiguration, permanency, humiliation and other personal elements foreign to property which have no distinct standard of money measurement are permissible elements of damages in the latter. This may and often does in the minds of many give rise to great expectations and surrounds such claims with a tempting atmosphere of speculation unknown to property tort actions inviting to litigation and exploitation as generally known and so indicated by the proportion of such actions crowding our courts."[42]

We are persuaded that there is greater likelihood of harm to the client as the result of the

---

[42] *Kelley v Judge of Recorder's Court of Detroit,* 239 Mich 204, 213; 214 NW 316; 53 ALR 273 (1927).

solicitation of personal injury claims than of other claims. Personal injury claims, in contrast with general civil litigation and personal injury defense, are almost universally handled on a contingent fee basis and there is no fixed dollar value for the claimant's injuries. The combination of these factors creates opportunities for taking advantage of the client.

The absence of a fixed dollar value allows a lawyer to cloud the mind of the client with promises of large awards. Expectations may be created that cannot be realized, and the client thereby exploited. Even when there is reality to the promise, the allure of the potential gain and the absence of client financial obligation may create the belief that there is nothing to lose and everything to gain by entering into the arrangement. The client may do so without reflection and comparison. He may even feel pressured to do so for fear of losing the opportunity presented by the lawyer. As a result he may lose the opportunity for better representation.

Claimants in general civil litigation are less likely to be exploited by the creation of expectations that cannot be realized and, because they generally have a financial obligation to the lawyer, are more likely, as are defendants, to compare and reflect before accepting a lawyer's proposal for representation.

Also characteristic of personal injury practice is a high volume of claims which has substantially contributed to the overloading of the justice system and also presents problems for defendants faced with a large number of claims. The system depends upon negotiated settlement to dispose of most cases and puts defendants, as well as plaintiffs, under pressure to settle; the cost of defense

also puts pressure on defendants to settle. This characteristic of personal injury claims, in combination with the contingent fee, may encourage some lawyers to emphasize quantity rather than quality of representation, to settle claims for less than their full value and to prepare for trial less adequately; the absence of a fixed dollar value often prevents clients from evaluating the result and detecting deficient representation. Discouraging solicitation of claims which would add to the volume may tend to improve the quality of representation. High volume coupled with contingent fee compensation of lawyers is not characteristic of general civil litigation or personal injury defense.

We are also persuaded that there is greater likelihood of harm to the justice system and defendants as the result of the solicitation of personal injury claims than of other claims. The same characteristics of the personal injury claim practice—high volume, the contingent fee, absence of a fixed standard—encourage the bringing of marginal and nuisance claims, an imposition on the justice system and defendants, especially insurers and deep pocket defendants. The pressures to settle make it impractical to insist on a disposition on the merits of all such claims. Where the claimant seeks out the lawyer it is less likely that the claim is marginal or nuisance than where the lawyer seeks out the claimant. Barring the solicitation of personal injury claims discourages the fomentation of litigation and is rationally related to a legitimate state interest in discouraging the bringing of marginal and nuisance claims.

In arguing that the risks of solicitation are not limited to personal injury claims, some specific points are made:

(1) undue influence depends on the circum-

stances of the solicitation, and not on the type of claim being solicited—the statute does not prohibit a lawyer from approaching an injured person to solicit representation in a property damage action, but a person who has recuperated from his injury may not be approached regarding a personal injury claim;

(2) the fomenting of litigation is possible in any context, and lawyers who bring public interest, civil rights and consumer class actions instigate lawsuits that would not otherwise be brought;

(3) other sorts of claims, such as arson and property damage claims, are equally susceptible to being brought fraudulently; and

(4) unwarranted settlements may be as readily procured in stockholder derivative and consumer class actions.

It is further claimed that if personal injury litigation is distinguishable, then the prohibition should extend to injury defense as well.

We respond:

(1) Because of the contingent fee (absence of financial obligation to the lawyer) and the potential of a large award, even a healthy solicited person is less likely to make an informed decision when a personal injury claim rather than property damage or other general civil litigation is involved;

(2) The volume of public interest, civil rights and consumer class actions is considerably less than that of personal injury claims. Because such actions present novel and often important issues, the defendant is more likely to defend than to settle. The prospect of large pecuniary gain for the client is not the basis on which his or her participation in the action is solicited. While some such actions are brought with a view to justifying large legal fees, it is federal and state policy to encourage

such actions as a means of enforcing statutes aimed at commercial and other practices contrary to the public interest.

(3) While property damage claims can be brought fraudulently, the volume of such claims has not created the same pressures to settle as personal injury claims; also, persons who have such claims are less readily found than personal injury claimants and the value of such claims is more certain.

(4) There is little risk of imposition on the claimant in a stockholder derivative or consumer class action, and they do not clog the dockets.

In sum, it is the coincidence of many factors that distinguishes personal injury claims; pointing to particular risks of harm in other litigation, including personal injury defense, does not render the classification irrational.

It is also contended, based on a provision of the Revised Judicature Act[43] which voids all solicited agreements, that "if the Legislature has seen fit to treat all forms of solicitation as equal in the civil arena, then a criminal defendant charged with solicitation should be given the same evenhanded treatment".

While that statute bars solicitation of any legal business and renders solicited contracts, contingent or otherwise, void, it does not follow that the classification of the solicitation statute is invalid in singling out the solicitation of personal injury claims for the additional penalties of a criminal statute. The Legislature could properly conclude that an added deterrent was necessary to discourage the solicitation of personal injury claims. A decision to solicit depends in part on an assess-

---

[43] MCL 600.919(2); MSA 27A.919(2).

ment of the likely gain and risk of loss. In most areas of litigation the threat of invalidating the contract may be sufficient to discourage the solicitation. In the personal injury area the presence of a potential for indeterminate gain, a high volume of cases making the invalidation of any single contract less important, and the absence of a fixed dollar value which might encourage clients to police the quality of representation, make the sanction of invalidation less efficacious. In addition, because most injured persons are taken to hospitals and identified, personal injury claimants are more readily solicited than general civil litigants. Also such claimants, in contrast with commercial litigants and personal injury defendants, generally do not have retained legal counsel. We conclude that the Legislature could properly decide that the invalidation of solicited contracts was not an adequate deterrent and that a special criminal disincentive was necessary to discourage the solicitation of personal injury claims.

We do not mean to disparage the role played by the personal injury bar. Still we must conclude that the Legislature could appropriately find that a special measure was necessary to prevent solicitation in that field.

The limitation to personal injury claims bears a rational relation to the state interests sought to be furthered by the solicitation statute. The lawyers in these cases are not denied equal protection of the law.

## IV

We turn to the contention that the statute is void for vagueness.

A statute may be challenged for vagueness on the grounds that it

—is overbroad, impinging on First Amendment freedoms, or

—does not provide fair notice of the conduct proscribed, or

—is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.[44]

### A

The primary challenge is on the ground of overbreadth.

It is asserted that

—the prohibition against solicitation would allow application of the statute to activities meant to advance valid associational interests found to be protected in the *United Transportation Union*[45] and other cases[46] and to a form of political expression found to be protected in *In re Primus*[47] and *National Ass'n for the Advancement of Colored People v Button,* 371 US 415; 83 S Ct 328; 9 L Ed 2d 405 (1963), and

---

[44] *Grayned v Rockford,* 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972).

[45] *United Transportation Union v State Bar of Michigan,* 401 US 576; 91 S Ct 1076; 28 L Ed 2d 339 (1971), where the United States Supreme Court invalidated an *injunction* based on the solicitation statute because of the union members' First Amendment right to help and advise each other in securing effective legal representation.

It is argued that the *UTU* decision *was* a declaration of the statute's total invalidity. We read *UTU* as proscribing only the unconstitutional application of the statute. The Court did not specifically consider the constitutionality of the solicitation statute.

[46] *Brotherhood of Railroad Trainmen v Virginia,* fn 28 *supra; United Mine Workers of America v Illinois State Bar Ass'n,* fn 29 *supra.*

[47] *In re Primus,* 436 US 412; 98 S Ct 1893; 56 L Ed 2d 417 (1978).

—the prohibition against "directly or indirectly soliciting" could reach truthful advertising given First Amendment protection in *Bates v State Bar of Arizona*,[48] and

—in the context of in-person solicitation for pecuniary gain, the blanket prohibition is too broad because under *Ohralik*,[49] such activities can be proscribed only when done in circumstances that present a significant danger of overreaching or undue influence.

An overbreadth challenge does not require that the challenger show he is injured by the overinclusiveness of the statute. He can rely on the rights of hypothetical third persons and may obtain a declaration of the statute's non-enforceability without showing that the conduct he himself engaged in is constitutionally protected. An overbreadth challenge thus does not depend on the factual context of the case at hand. It is irrelevant that the litigant himself is charged under the statute with expression or conduct different than those he asserts the statute overinclusively proscribes.

A successful overbreadth challenge thus permits a person charged with speech or conduct violative of a statute to escape punishment based on the First Amendment rights of others impinged upon by the statute although under a narrower, properly drawn statute, his speech or conduct could be punished because it is not so protected. Accordingly, it would be no answer to the overbreadth challenge that the solicitations here represented a significant danger of overreaching or undue influence and were not meant to advance valid associa-

[48] *Bates v State Bar of Arizona,* 433 US 350; 97 S Ct 2691; 53 L Ed 2d 810 (1977).

[49] *Ohralik v Ohio State Bar Ass'n,* 436 US 447; 98 S Ct 1912; 56 L Ed 2d 444 (1978).

tional interests and were not a form of political expression and were not truthful advertising.

It is "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression", that the Court does not inquire whether the litigant's "own rights of free expression are violated".[50]

But not every First Amendment right supports an overbreadth challenge. In *Bates* the United States Supreme Court held that the overbreadth doctrine does not apply "to professional advertising, a context where it is not necessary to further its intended objective". The Court reasoned that "[s]ince advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation".[51]

In *Ohralik* the United States Supreme Court declared that the lawyer could not "make a successful overbreadth argument in view of the Court's observation in *Bates*", and said: "Commercial speech is not as likely to be deterred as noncommercial speech, and therefore does not re-

[50] *Broadrick v Oklahoma*, fn 23 supra, pp 610-612.

The Court declared that this exception to the general principle that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court" and that "constitutional rights are personal and may not be asserted vicariously", was "carved out in the area of the First Amendment" in recognition "that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society".

[51] *Bates v State Bar of Arizona, supra*, p 381.

The Court added that an advertiser disseminating information about a product or service that he provides presumably "can determine more readily than others whether his speech is truthful and protected".

quire the added protection afforded by the over-breadth approach".[52]

Accordingly, the overbreadth challenge here based on *Bates* and *Ohralik* must be rejected because the United States Supreme Court has held that the overbreadth doctrine has no application to commercial speech of the kind involved in those cases.

This still leaves the question whether an overbreadth challenge may be advanced based on the associational rights protected in *United Transportation Union* and the rights of political expression protected in *Primus* and *Button.*

In *Broadrick v Oklahoma,* 413 US 601, 615-616; 93 S Ct 2908; 37 L Ed 2d 830 (1973), the United States Supreme Court declared that "where *conduct* and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep". (Emphasis supplied.) Applying the real and substantial test, the Court concluded that the statute there presented was "not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied".[53]

In a subsequent case, the Court indicated that the exhibition of motion pictures is conduct as well

---

[52] *Ohralik v Ohio State Bar Ass'n, supra,* p 462, fn 20.

[53] The Court explained that as the unprotected behavior "moves from 'pure speech' toward *conduct* and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct", the function of the overbreadth doctrine "attenuates". The uncertain prediction that the broadly worded statute "may deter protected speech to some unknown extent" must at some point, said the Court, give way to the state's interest in "enforcing the statute against conduct that is admittedly within its power to proscribe." (Emphasis supplied.)

as speech. It concluded that the deterrent effect of an ordinance prohibiting the showing of films containing nudity by a drive-in movie theater when its screen is visible from a public street or place was "both real and substantial", and that the statute was void for overbreadth.[54]

Recently, in rejecting a challenge to the constitutionality of an ordinance zoning adult theaters, the Court emphasized still another factor in deciding that the overbreadth challenge was insubstantial. The Court said that the exception to the "traditional rules of standing" is "justified by the overriding importance of maintaining a free and open market for the interchange of *ideas*". (Emphasis supplied.) It concluded that the ordinance would not have a "significant deterrent effect on the exhibition of films protected by the First Amendment". It said that there is "a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance". This was not "the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized" in some of its earlier cases.[55]

The associational activities protected in *United*

---

[54] *Erznoznik v Jacksonville*, 422 US 205, 216; 95 S Ct 2268; 45 L Ed 2d 125 (1975).

[55] *Young v American Mini Theatres, supra,* pp 60, 61.

For the reasons stated in the accompanying text and because "the limited amount of uncertainty in the ordinances is easily susceptible of a narrowing construction" the Court said "we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court". Finally, the Court declared that an "exhibitor's doubts as to whether a borderline film may be shown in his theater, as well as in theaters licensed for adult presentations, [did not involve] the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized" in some of its earlier cases.

*Transportation Union* and the form of political expression protected in *Primus* and *Button* involve conduct as well as speech—the solicitation of clients, the same kind of conduct which the solicitation statute seeks to regulate.

Accordingly we are obliged to assess the overbreadth by the real and substantial test enunciated in *Broadrick.*

We are inclined to the view that the solicitation statute does not represent "the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized" in some of the decisions of the United States Supreme Court.

That Court's decision in *United Transportation Union* holding that an injunction based on this very solicitation statute was unconstitutional, and its observation that "the principle here involved cannot be limited to the facts of this case",[56] makes it highly unlikely that any union would be deterred from engaging in the activities found there to be protected.

One must strain to imagine a case in which prosecuting a claim based on injury from an accident would be a form of political expression of the kind protected in *Primus* and *Button.*

It appears therefore that the overbreadth challenges based on *United Transportation Union, Primus,* and *Button* are not real and substantial. We do not, however, place our holding on that ground.

### B

Any overbreadth of the solicitation statute can be cured by a limiting construction.

---

[56] *United Transportation Union v State Bar of Michigan,* fn 45 *supra,* p 585.

In *Broadrick* the United States Supreme Court said that "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and *only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.*" (Emphasis supplied.)[57]

We are unpersuaded by the argument that a limiting construction should not be placed on the solicitation statute because so much rewriting would be necessary that we would be intruding on the legislative function. Our construction does not involve rewriting but, rather, a statement of exceptions to the statute's otherwise blanket prohibitions. It is no intrusion on the power of the Legislature to engraft exceptions to a broad prohibition when no violence is done to the Legislature's central intent and when without such exceptions the statute must fall.

We find this case analogous to *People v Bricker*.[58] Bricker, prosecuted under the criminal abortion statute,[59] resisted prosecution on the ground that although the statute prohibited all abortions the United States Supreme Court had held that the state could not prohibit abortions in certain circumstances.[60] We said that we are bound to preserve the constitutionality of statutes by construction, if possible, and that prior constructions are not controlling. We concluded that a construction consistent with the legislative intent could be applied:

[57] *Broadrick v Oklahoma, supra,* p 613.

[58] *People v Bricker,* 389 Mich 524; 208 NW2d 172 (1973).

[59] MCL 750.14; MSA 28.204.

[60] *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973); *Doe v Bolton,* 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973).

"*When the Legislature adopted the statutes prohibiting most abortions there was little or no reason to question their constitutionality.* The medical and other developments which influenced the United States Supreme Court to decide *Roe [v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973)] and *Doe [v Bolton,* 410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973)] as it did were far ahead.

\* \* \*

"The central purpose of this legislation is clear enough—to prohibit all abortions except those required to preserve the health of the mother. *The Supreme Court now requires other exceptions.* They can properly be read into the statutes to preserve their constitutionality.

\* \* \*

"In light of the declared public policy of this state [to prosecute abortion] and the changed circumstances resulting from the federal constitutional doctrine elucidated in *Roe* and *Doe,* we construe § 14 of the penal code to mean that the prohibition of this section shall not apply to 'miscarriages' authorized by a pregnant woman's attending physician in the exercise of his medical judgment; the effectuation of the decision to abort is also left to the physician's judgment; however, a physician may not cause a miscarriage after viability except where necessary, in his medical judgment, to preserve the life or health of the mother." (Emphasis supplied.)[61]

So, too, with the solicitation statute, there was little or no reason to question its constitutionality at inception.[62] It admitted of no exceptions, but the

[61] *People v Bricker, supra,* pp 529-530.

*Cf. People v Neumeyer,* 405 Mich 341; 275 NW2d 230 (1979). The issue that divided the Court in that case is not present here. The Court's power, in a proper case, to save a statute by construction was not questioned by the dissenting Justices.

[62] For this reason we cannot fault the Legislature for having set a "too large" net. The statute in *United States v Reese,* 92 US 214; 23 L Ed 563 (1875), was void *ab initio.*

The suggestion that *Reese* applies whenever the construction can be

United States Supreme Court now requires that some be made.

Earlier in this opinion we identified protection of the client against overreaching by lawyers and the protection of defendants and the justice system from the fomentation of litigation as possible legislative purposes of the solicitation statute. The exception which we now engraft onto the statute to meet the requirements of the United States Supreme Court is consonant with both purposes.

We construe the solicitation statute to mean

accomplished only by "adding words" to the statute is simplistic. *Bricker* "added words" to the statute. See, also, *United States v Harriss,* 347 US 612; 74 S Ct 808; 98 L Ed 989 (1954) (adding qualification that statute, requiring registration of expenditures for the purpose of influencing the passage or defeat of any legislation, applied only to direct communication with congressmen); *United States v Congress of Industrial Organizations,* 335 US 106; 68 S Ct 1349; 92 L Ed 1849 (1948) (statute prohibiting union from making any expenditure in connection with an election held inapplicable to money spent publishing union house organ that contained political endorsements). In *Winters v New York,* 333 US 507, 514; 68 S Ct 665; 92 L Ed 840 (1948), the New York Court of Appeals had construed a state statute punishing possession of written material devoted to criminal deeds and stories of lust and bloodshed as applicable only to the massing of such stories in such a way as to incite the reader to crimes against the person. The United States Supreme Court held that "[t]he interpretation by the Court of Appeals *puts these words in the statute* as definitely as if it had been so amended by the legislature." (Emphasis supplied.) The situation in *Marchetti v United States,* 390 US 39, 59-60; 88 S Ct 697; 19 L Ed 2d 889 (1968), was altogether different:

"[T]he imposition of use-restrictions would directly preclude effectuation of a significant element of Congress' purposes in adopting the wagering taxes. Moreover, the imposition of such restrictions would necessarily oblige state prosecuting authorities to establish in each case that their evidence was untainted by any connection with information obtained as a consequence of the wagering taxes; the federal requirements would thus be protected only at the cost of hampering, perhaps seriously, enforcement of state prohibitions against gambling. *We cannot know how Congress would assess the competing demands of the federal treasury and of state gambling prohibitions;* we are however, entirely certain that the Constitution has entrusted to Congress, and not to this Court, the task of striking an appropriate balance among such values. We therefore must decide that it would be improper for the Court to impose restrictions of the kind urged by the United States." (Emphasis supplied.)

that its prohibition applies only to solicitations which are done primarily to advance the pecuniary interest of a lawyer who solicits or in whose interest solicitation is committed.[63]

---

[63] The Supreme Court observed in *In re Primus*, fn 47 *supra*, p 438, fn 32, that "[n]ormally the purpose or motive of the speaker is not central to First Amendment protection, but it does bear on the distinction between conduct that is 'an associational aspect of "expression"' * * * and other activity subject to plenary regulation by government. * * * In *Ohralik v State Bar Ass'n, [supra]*, the lawyer was not engaged in associational activity for the advancement of beliefs and ideas; his purpose was the advancement of his own commercial interests. The line, based in part on the motive of the speaker and the character of the expressive activity, will not always be easy to draw, * * * but that is no reason for avoiding the undertaking." (Citations omitted.)

The limitation announced in the text is based on our reading of the decisions of the United States Supreme Court and is designed to remove from the prohibition of the statute those activities protected by the *Button* through *Primus* line of cases.

If the bringing of the lawsuit which is the object of the solicitation is, for the lawyer or his organization, a form of political expression, then the primary purpose of the solicitation is not the advancement of the lawyer's pecuniary interest, so the statute would not apply to it.

Similarly, where an association operates a *bona fide* legal assistance or referral program, the resulting solicitations are done to advance the First Amendment associational interests of that association or its members, and therefore are not done primarily to advance a lawyer's pecuniary interests; the attorney who participates in a *bona fide* program of this sort shares in the association's First Amendment protection even if he personally participates solely for his own pecuniary gain.

Even if the unifying purpose of an organization is ultimately the advancement of its members' pecuniary interests, the legal programs it sponsors may still be beyond the reach of the statute. See, *e.g.*, *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v National Right to Work Legal Defense & Educational Foundation, Inc*, 192 US App DC 23; 590 F2d 1139 (1978) (Right to Work Foundation, which sponsors litigation by union members against unions that represent Foundation contributor's employees may still be a *bona fide* independent legal aid organization). The statute would apply, however, to an association that " 'is a mere sham to cover what is actually nothing more than an attempt' * * * by a group of attorneys to evade a valid state rule against solicitation for pecuniary gain". *In re Primus, supra*, p 428, fn 20 (citations omitted).

Union members have a First Amendment right to work for their mutual aid and protection, and because of this the activities of a union official acting as a liaison between union members and attor-

## C

The lawyers here cannot seriously contend that they did not have fair notice of the statute's proscription.[64] Again, we find *Bricker* controlling. The defendant in that case was not a physician and therefore the *Roe* and *Doe*[65] abortion decisions gave no protection to his conduct. His conduct legitimately could be punished, and he had adequate notice that the Legislature had chosen to punish it. His conviction was therefore affirmed.[66]

Reliance on *People v Dempster*[67] is misplaced. That case concerned the construction of the words "commercial paper" in the Uniform Securities Act.[68] We read the commercial paper exemption in light of the purpose of the Uniform Securities Act, and concluded that the exemption applied to a smaller class of documents than that encompassed by the definition of "commercial paper" in § 3-805 of the Uniform Commercial Code. We held, though, that this new construction could have prospective application only, saying:

"This Court is not able, within the bounds of due

---

neys chosen by the union are not within the scope of the statute even if the official is remunerated for services so performed. *United Transportation Union,* fn 45 *supra.* But the activities of all those who can point to affiliation with a labor union are not necessarily beyond the statute's reach: where the official's pecuniary involvement so overwhelms his role as union representative that he properly can be termed an agent solely of the attorney and not of the union, claims based on First Amendment associational rights might be dismissed as pretext.

[64] The trial court properly rejected the claim that the statute is so poorly drafted that it is utterly incomprehensible to a man of reasonable intelligence.

[65] See fn 60, *supra.*

[66] In *People v Howell,* 396 Mich 16, 24-29; 238 NW2d 148 (1976), we affirmed a conviction for acts antedating construction of a previously vague statute. Defendants in *Howell* also could not allege that the vagueness resulted in lack of adequate notice.

[67] *People v Dempster,* 396 Mich 700; 242 NW2d 381 (1976).

[68] MCL 451.501 *et seq.;* MSA 19.776(101) *et seq.*

process, to 'interpret' a criminal statute which contains an ambiguous exemption such that it results in conviction of the defendant charged in the specific case. That is not the 'fair warning' demanded by the Constitution."[69]

That the bar on retrospective application operates only when there is an issue of "fair notice" is made clear by the Court's citation of Freund, *The Supreme Court and Civil Liberties*, 4 Vand L Rev 533, 541 (1951):[70]

"The objection of vagueness is twofold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. *The former objection* could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss." (Emphasis supplied.)

Where "fair notice" is not an issue, retroactive application is permitted.[71]

## D

We do find, however, that due process rights would be violated unless a limiting construction is

[69] *People v Dempster, supra,* p 715.

[70] See, also, *Winters v New York,* fn 62 *supra,* pp 514-515: "We assume that the defendant, at the time he acted, was chargeable with knowledge of the scope of subsequent interpretation."

[71] The United States Supreme Court has indicated that where a limiting construction is placed on a statute to eliminate overbreadth the statute may be applied retrospectively to conduct occurring before the limiting construction was added. See *Dombrowski v Pfister,* 380 US 479, 491, fn 7; 85 S Ct 1116; 14 L Ed 2d 22 (1965); *United States v Thirty-Seven Photographs,* 402 US 363, 375, fn 3; 91 S Ct 1400; 28 L Ed 2d 822 (1971).

It is a separate question whether a statute may be applied retroactively when it fails to give fair notice of its proscription and still another question whether it can be so applied where a limiting construction is added, not to cure overbreadth, but to eliminate indefiniteness.

applied before prosecution. It was noted at the outset that there are three species of vagueness challenges.[72] We have rejected the claim that this statute, even absent construction, fails to give adequate notice of the conduct proscribed. We have also held that the overbreadth challenge, to the extent based upon *United Transportation Union* and *Primus* and *Button,* failed because of the limiting construction we place on the statute. No limiting construction was necessary to address the overbreadth challenge based on *Bates* and *Ohralik* because the overbreadth doctrine does not apply to commercial speech.

Nonetheless, a limiting construction, making the statute expressly inapplicable to activities protected by *Bates* and *Ohralik,* is necessary to prevent violation of a due-process right akin to that which protects one from application of a law so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.

If prosecution were to proceed without benefit of a limiting construction, a person might be convicted for acts within the literal terms of the solicitation statute which cannot, by reason of *Bates* and *Ohralik,* be proscribed. Unless the trier of fact has been apprised of the limiting construction, it cannot properly be said that either its assessment of the evidence or its finding was guided by such construction.

In *Shuttlesworth v Birmingham*[73] the United States Supreme Court reversed a conviction based on an ordinance prohibiting persons from standing on a sidewalk in such a way as to obstruct free

[72] See fn 44, *supra,* and accompanying text.

[73] *Shuttlesworth v Birmingham,* 382 US 87; 86 S Ct 211; 15 L Ed 2d 176 (1965).

passage, or from standing on a sidewalk after having been requested by any police officer to move on. As written, the ordinance suffered from an obvious constitutional defect.[74] The Alabama Supreme Court subsequently construed the ordinance always to require a showing that the accused blocked free passage. The United States Supreme Court concluded that, although the ordinance was not unconstitutional as construed, the defendant's conviction should be reversed:

"In any event, the trial court in the present case was without guidance from any state appellate court as to the meaning of the ordinance.

"The trial court made no findings of fact and rendered no opinion. For all that appears, the court may have found the petitioner guilty only by applying the literal—and unconstitutional—terms of the ordinance. * * * Because we are unable to say that the Alabama courts in this case did not judge the petitioner by an unconstitutional construction of the ordinance, the petitioner's conviction under § 1142 cannot stand."[75]

*Shuttlesworth* was applied in *Ashton v Kentucky.*[76] The defendant was convicted of common-law criminal libel. The trial judge charged that the offense is committed by publication of any writing "calculated to create disturbances of the

---

[74] "Literally read, therefore, the second part of this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. It 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' *Cox v Louisiana,* 379 US 536, 579 [85 S Ct 453; 13 L Ed 2d 471 (1965)] (separate opinion of Mr. Justice Black). Instinct with its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state." *Shuttlesworth v Birmingham, supra,* pp 90-91.

[75] *Id.,* p 92.

[76] *Ashton v Kentucky,* 384 US 195; 86 S Ct 1407; 16 L Ed 2d 469 (1966).

peace, corrupt the public morals, or lead to any act, which, when done, is indictable". The Kentucky Court of Appeals affirmed the conviction, but redefined the crime as publication of a defamatory falsehood, with malice; it ruled that criminal liability could not be predicated on a breach of peace. Reversing the conviction, the United States Supreme Court cited *Shuttlesworth* for the proposition that

"where an accused is tried and convicted under a broad construction of an act which would make it unconstitutional, the conviction cannot be sustained on appeal by a limiting construction which eliminates the unconstitutional features of the act, as the trial took place under the unconstitutional construction of the act."[77]

In addition to the risk that a defendant might be convicted without a finding that he engaged in prohibited conduct there is the risk that a belated construction may deprive a defendant of an opportunity to make out a valid defense.[78]

The indictment charging Posner and Keane with violation of the solicitation statute merely states the grand jury's conclusion, and gives no indication of the nature of the activities the grand jury found probable cause to believe had occurred. For all that appears, that grand jury may have only found that they engaged in conduct, albeit within the literal scope of the statute, too innocuous to prohibit consistent with *Ohralik*. We believe that the concerns voiced in *Shuttlesworth* and *Ashton*

[77] *Id.,* p 198.

[78] "In any case the shifting theories underlying the charge, the conviction, and the decision on appeal, leave considerable doubt as to the precise nature of Royal's offense *and of the proof and legal arguments that might have been able to establish innocence." Royal v Superior Court of New Hampshire, Rockingham County,* 531 F2d 1084, 1087 (CA 1, 1976), *cert den* 429 US 867; 97 S Ct 178; 50 L Ed 2d 147 (1976) (emphasis supplied).

prevent Posner and Keane from being forced to stand trial without a grand jury having found probable cause to believe a violation of the statute, as construed, occurred.[79] For this reason, the indictment must be quashed, without prejudice to reindictment on the basis of the statute as construed.

Count I of Woll's indictment charges conspiracy to solicit personal injury claims and Count II charges solicitation of personal injury claims. The second paragraph of Count I describes some activities with particularity; all the activity so described centers on the solicitation of workers' compensation claims. We have held that the application of the solicitation statute to workers' compensation will be prospective only. To the extent, if at all, the indictment concerns the solicitation of non-workers' compensation personal injury claims it also fails to give any indication of the nature of the activities the grand jury found probable cause to believe occurred. Woll's indictment should therefore also be dismissed, again without prejudice to reindictment for the solicitation of non-workers' compensation personal injury claims.[80]

---

[79] Cf. *United States v Conlon*, 481 F Supp 654 (D DC, 1979) (giving statute narrow construction and dismissing indictment without prejudice to reindictment). Cf., also, *Royal, supra*, p 1088: "And while the danger to others might be cured by a narrowing construction on appeal, the unfairness of Royal's *standardless arrest*, prosecution and trial could not." (Emphasis supplied.) The *Ashton* rationale is thus not limited to the trier's findings of fact.

[80] This is not to say that a conviction under a statute whose vagueness is subsequently cured on appeal can never stand. In *People v Howell*, fn 66 *supra*, defendant Helzer was convicted of gross indecency. We held that an "act of gross indecency" was unconstitutionally vague in that it gave the trier of fact excessive discretion to determine whether a crime was committed. Prior decisions affirming convictions under the statute for acts identical to those with which defendants were charged provided defendants with fair notice that their conduct was proscribed. We therefore construed the term as prohibiting only certain specific acts. Helzer's conviction was nonetheless affirmed because we were able to say with certainty that the jury

## E

Woll sought a declaratory judgment and the Attorney General counterclaimed seeking a limiting construction of the statute. The parties limited their argument to the issue of facial invalidity, and did not address the question of how the statute should properly be read should that argument fail.

At this time we can provide only a partial limiting construction. Because of *Bates,* we hold that the solicitation statute does not apply to truthful advertising by a lawyer.

The United States Supreme Court held in *Ohralik* that in-person solicitation for pecuniary gain could be prohibited as a prophylactic measure in circumstances in which there is a risk of overreaching, undue influence, or other evils.

The implication of the Court's holding is that such solicitation cannot be punished unless it occurs in circumstances presenting such risks. The

convicted Helzer for committing one of the specifically proscribed acts.

The United States Supreme Court could not be so assured in *Shuttlesworth v Birmingham, supra,* p 92:

"Upon the evidence before him, the trial judge as finder of the facts might easily have determined that the petitioner had created an obstruction, but had subsequently moved on. The court might alternatively have found that the petitioner himself had created no obstruction, but had simply disobeyed Patrolman Byars' instruction to move on. In either circumstance the literal terms of the ordinance would apply; in neither circumstance would the ordinance be applicable as now construed by the Alabama Court of Appeals."

Although the offending publication was part of the record in *Ashton v Kentucky, supra,* there was no assurance that the jury found it to be defamatory rather than merely likely to cause a breach of peace. *Cf. Thompson v Gaffney,* 540 F2d 251 (CA 6, 1976), *cert den* 429 US 1078; 97 S Ct 823; 50 L Ed 2d 798 (1977), *reh den* 430 US 960; 97 S Ct 1611; 51 L Ed 2d 811 (1977) (saving construction of disorderly conduct ordinance came three years after conviction; *habeas corpus* denied because trial transcript was not before court, so presumption of regularity prevented finding that trial judge improperly charged jury).

task, then, is to define what circumstances can be said to present risks of the evils that the state may legitimately attempt to avoid.

We have previously determined that the prophylactic measure cannot be so broad as to prohibit all lawyer solicitation for remuneration. In *State Bar Grievance Administrator v Jaques (On Remand)*,[81] Jaques did not directly approach potential clients; instead, he was found to have asked a union official to recommend his services to others. We held that the disciplinary rule could not reach such conduct because in that situation there was no significant danger of overreaching.

*Ohralik* still might be read as allowing a prohibition of all communications with potential clients by the lawyer or someone acting solely for him, but even this may be too broad a proscription.[82] Consider, for example, a runner who distributes business cards. One might say that *Ohralik* protects such conduct because the potential client has an opportunity to reflect before calling the lawyer. On the other hand, there is a risk of overreaching and undue influence—untrue representations might be made by the runner. The risk that some runners might make untrue representations might be thought to justify a ban on the distribution of business cards as a prophylactic measure.

The determination of the allowable scope of state regulation in light of *Ohralik* should not be made without benefit of briefing and argument.

We

—dismiss the indictments against Posner and Keane without prejudice to reindictment, and

---

[81] *State Bar Grievance Administrator v Jaques (On Remand)*, 407 Mich 26; 281 NW2d 469 (1979).

[82] See Comment, *Attorney Solicitation: The Scope of State Regulation After Primus and Ohralik*, 12 U Mich J L Reform 144, 165-166 (1978).

—remand Woll's cause to the Court of Appeals with the direction that it modify the judgment of the circuit court consistent with this opinion and for briefing and argument on the proper limiting construction of the solicitation statute. Posner and Keane, the State Bar and other appropriate interested persons shall be allowed to file briefs *amicus curiae* in the Court of Appeals.

No costs, a public question.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

ORDER ON MOTION FOR REHEARING

December 22, 1980

On order of the Court, a motion for rehearing filed by defendant Attorney General is treated as a motion for clarification of this Court's opinion and order of October 3, 1980 and, so treated, it is hereby granted. It is the Court's intent that only Counts I and II of the indictment against plaintiff Woll are to be dismissed and that the remaining counts of the indictment are unaffected by this Court's opinion and order.